UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:07-HC-2123-BO
5:08-HC-2095-BO
5:08-HC-2156-BO
5:08-HC-2183-BO
5:09-HC-2045-BO
5:09-HC-2083-BO
5:10-HC-2013-BO
5:10-HC-2022-BO
5:10-HC-2124-BO
5:10-HC-2151-BO
5:10-HC-2153-BO

UNITED STATES OF AMERICA,              )
              PETITIONER,              )
                                       )
         V.                            )
                                       )
GRADY EWING MAYS, JOSEPH               )
AARON EDWARDS, GERALD WAYNE            )
TIMMS, THOMAS HEYER, ANTON             )
JOHNSON, CLYDE M. HALL, SEAN           )
ROBERT FRANCIS, CARLOS                 )
OFARRIT-FIGUEROA, PETER M.             )
EBEL, WALTER WOODEN, LARRY             )
ARGUS SULLIVAN.                        )
              RESPONDENTS.             )
_____    )


STATUS CONFERENCE

AT RALEIGH
JANUARY 21, 2011
BEFORE THE HONORABLE TERRENCE W. BOYLE
U. S. DISTRICT JUDGE

**APPEARANCES:**

**FOR THE PETITIONER:**

MR. R. A. RENFER, JR.
MR. EDWARD GRAY
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC

**FOR THE RESPONDENTS:**

FOR RESPONDENT MAYS:

MS. JANE PEARCE
MS. SUZANNE LITTLE
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

FOR RESPONDENT TIMMS:

MR. RAYMOND TARLTON
ATTORNEY AT LAW
107 FAYETTEVILLE ST.
SUITE 500
RALEIGH, NC

FOR RESPONDENT EDWARDS:

MS. JANE PEARCE
MR. JOSEPH ROSS
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

FOR RESPONDENT HEYER:

MR. THOMAS MCNAMARA
FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

FOR RESPONDENT JOHNSON:

MR. JAMES B. CRAVEN, III
ATTORNEY AT LAW
P.O. BOX 1366
DURHAM, NC

FOR RESPONDENT FRANCIS:

MR. JAMES R. HAWES
ATTORNEY AT LAW
127 W. HARGETT ST.
RALEIGH, NC

FOR RESPONDENT HALL:

MR. JOSEPH ROSS
MS. JANE PEARCE
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

FOR RESPONDENT EBEL:

MR. THOMAS MCNAMARA
FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

FOR RESPONDENT OFARRIT-FIGUEROA:

MR. THOMAS MCNAMARA
FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC


FOR RESPONDENT WOODEN:                FOR RESPONDENT SULLIVAN:

MS. JANE PEARCE                       MS. JANE PEARCE
MR. JOSEPH ROSS                       MS. SUZANNE LITTLE
ASST. FED. PUBIC DEFENDER             ASST. FED. PUBLIC DEFENDER
P.O. BOX 25967                        P.O. BOX 25967
RALEIGH, NC                           RALEIGH, NC

COURT REPORTER:  DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

1  THURSDAY, JANUARY 20, 2011

2  **THE COURT:** ALL RIGHT. MR. MCNAMARA, DO YOU AND

3  YOUR PEOPLE WANT TO COME UP, BECAUSE YOU ARE IN PROBABLY

4  MORE CASES THAN ANYONE ELSE. I'LL START OUT WITH YOU.

5  **MR. MCNAMARA:** YES, YOUR HONOR.

6  **THE COURT:** GOOD MORNING, MR. RENFER.

7  **MR. RENFER:** GOOD MORNING.

8  **THE COURT:** GOOD MORNING, MR. GRAY.

9  **MR. GRAY:** GOOD MORNING.

10  **MR. MCNAMARA:** GOOD MORNING, YOUR HONOR.

11  **THE COURT:** GOOD MORNING.

12  THESE ARE SOME OF MY THOUGHTS ABOUT WHAT I'D LIKE TO

13  BEGIN TO DO. SINCE THESE ARE CIVIL CASES, THE WAY THEY'RE

14  PRESENTED NOW, I DON'T BELIEVE THERE'S ANY IMPEDIMENT WITH

15  REGARD TO SCHEDULING MATTERS WITHOUT HAVING TO BRING THE

16  DETAINEES IN EVERY TIME. ANYBODY THINK DIFFERENTLY?

17  **MR. RENFER:** I BELIEVE THAT'S CORRECT, YOUR

18  HONOR.

19  **MR. MCNAMARA:** THAT'S FINE.

20  **THE COURT:** AND THAT WILL HELP US. I HAVEN'T

21  MADE UP MY MIND YET, AS FAR AS MY CASES GO, TO WHAT EXTENT

22  AND HOW CONSTANTLY WE NEED TO HAVE THE DETAINEE IN COURT

23  FOR PROCEEDINGS. THERE'S NO CONFRONTATION CLAUSE, RIGHT,

24  IF WE'RE PROCEEDING IN CIVIL COURT, AND THERE'S NO FIFTH

25  AMENDMENT INCRIMINATION, RIGHT?

1    I DON'T KNOW OFF THE TOP OF MY HEAD.  WHAT DUE

2 PROCESS RIGHTS ARE INVOLVED IN BEING HERE DURING THE

3 HEARINGS?  I JUST DON'T KNOW.  WHAT DO YOU THINK?

4         **MR. RENFER:**  YOUR HONOR, IN A DIFFERENT CONTEXT,

5 IN PRISONER LITIGATION, WHETHER IT BE IN THE 2255, CERTAIN

6 PROCEEDINGS, OBVIOUSLY EVIDENTIARY PROCEEDINGS THEY WOULD

7 HAVE TO BE THERE.  BUT IN OTHER CIVIL LITIGATION, THERE'S

8 NO CONSTITUTIONAL RIGHT TO BE PRESENT FOR A PRISONER.

9         **THE COURT:**  IN A CIVIL CASE?

10        **MR. RENFER:**  IN A CIVIL CASE, BECAUSE OF THE

11 AVAILABILITY OF THE CIVIL PROCEDURE, DISCOVERY, ET CETERA.

12 BUT THERE'S NO CONSTITUTIONAL RIGHT TO BE PRESENT AT ANY

13 HEARING OR A PARTICULAR TRIAL IN THIS MATTER.

14        **THE COURT:**  OF COURSE, THEY HAVE THE RIGHT TO

15 PUT ON WITNESSES, THE DUE PROCESS RIGHTS, SO THEY COULD BE

16 PRESENT TO TESTIFY.

17        **MR. RENFER:**  ABSOLUTELY.

18        **THE COURT:**  AND WHETHER THE DETAINEE HAS TO BE

19 PRESENT DURING THE TRIAL TO HEAR THE EVIDENCE, I DON'T

20 KNOW.  I HAVEN'T FIGURED THAT OUT.

21        **MR. RENFER:**  I DON'T BELIEVE IT'S REQUIRED JUST

22 BECAUSE OF CIVIL DISCOVERY, ALTHOUGH I THINK WITHOUT ANY

23 QUESTION IN THESE CASES, YOUR HONOR, NOBODY IS GOING TO

24 QUESTION THE RIGHT OF THE DETAINEE OR THE ADVISABILITY OF

25 THE DETAINEE BEING HERE FOR THE TRIAL OF THE CASE,

1  OBVIOUSLY.

2        **MR. MCNAMARA:**  YOUR HONOR, ONE THING IF YOU

3  COULD KEEP IN MIND, YOU KNOW WE'VE HAD A DIFFICULT TIME

4  WITH A NUMBER OF THESE MEN AND THEY FALL OUT OF FAVOR WITH

5  OUR OFFICE REPRESENTING THEM QUICKLY.

6        **THE COURT:**  YEAH.

7        **MR. MCNAMARA:**  AND THEN THEY WANT TO FILE

8  MOTIONS TO WITHDRAW AND THEY ACTUALLY FILE MOTIONS TO GET

9  US OUT OF THE CASE.

10        **THE COURT:**  RIGHT.

11        **MR. MCNAMARA:**  FOR THAT PURPOSE ALONE, IF WE

12  COULD KEEP IN MIND THAT IT MIGHT BE HELPFUL TO HAVE THEM

13  HERE SOMETIMES, BUT PARTICULARLY DURING THE TRIAL.  I

14  THINK WE DO NEED THEM HERE AT THAT STAGE BECAUSE THEY MAY

15  TESTIFY, FOR ALL WE KNOW.

16        **THE COURT:**  RIGHT.

17        **MR. RENFER:**  SURE.

18        **THE COURT:**  OR MAY BE CALLED AS A WITNESS.

19  CAN'T THEY BE CALLED BY THE GOVERNMENT AS AN ADVERSE

20  WITNESS?

21        **MR. RENFER:**  YES, YOUR HONOR.  ONE THING, I

22  DON'T BELIEVE YOU WERE MAKING A COMMENT ON THIS, IN FACT,

23  BUT IN FACT THEY DO HAVE A RIGHT TO ASSERT, IN A CIVIL

24  CASE, A FIFTH AMENDMENT PRIVILEGE.

25        **THE COURT:**  RIGHT.  BUT THAT WOULD BE JUST LIKE

1    ANY OTHER PERSON WHO MIGHT HAVE COMMITTED A CRIME.

2          **MR. RENFER:**  CORRECT.

3          **THE COURT:**  THEY CAN SAY, I DON'T WANT TO ANSWER

4    THAT QUESTION BECAUSE IT MAY TEND TO INCRIMINATE ME AND

5    PROVIDE INFORMATION THAT YOU DON'T OTHERWISE HAVE OR

6    PROVIDE INFORMATION DIRECTLY AGAINST MYSELF.  IF IT'S NOT

7    INVOLVING A CRIME BUT INVOLVING THINGS THAT ARE ADMITTED

8    OR ARE BENIGN, OR THAT SORT OF THING, YOU COULD PUT THEM

9    ON THE WITNESS STAND AND ASK THEM QUESTIONS.

10          **MR. RENFER:**  ABSOLUTELY.  YOU ARE ABSOLUTELY

11    CORRECT, YES.

12          **THE COURT:**  WHICH I DON'T KNOW THAT ANYBODY'S,

13    YOU KNOW, PENETRATED INTO THE PROCESS YET TO THINK ABOUT

14    IT.  THE WAY YOU MAY TRY ONE OF THESE CASES IS JOHN SMITH,

15    DETAINEE, TAKE THE STAND, YOU SWEAR TO TELL THE TRUTH,

16    YEAH.  OKAY.  I'M GOING TO TALK TO YOU ABOUT YOUR

17    BACKGROUND AND YOUR LIFE EXPERIENCES HERE.  I DON'T WANT

18    TO ANSWER.  WELL, YOU HAVE TO ANSWER.

19          **MR. RENFER:**  THAT'S CORRECT.

20          **THE COURT:**  OR YOU DON'T HAVE TO ANSWER BUT

21    WE'RE NOT GOING TO HEAR ANY EVIDENCE FROM YOU IF YOU DON'T

22    ANSWER.

23          **MR. RENFER:**  OBVIOUSLY, AS YOU INDICATED, WE'VE

24    NOT GOTTEN DOWN THAT PATHWAY BUT, YES, WE HAVE DISCUSSED,

25    INTERNALLY DISCUSSED TRIAL TACTICS, IF YOU WILL, YES, SIR.

1          **THE COURT:**  YOU KNOW, ONCE YOU LAY DOWN THE

2     GRID, THE GRAPH PAPER FOR A CIVIL CASE, AND AS CIVIL TRIAL

3     LAWYERS WE REMEMBER THE THINGS THAT HAPPENED OR CAN HAPPEN

4     IN A CIVIL CASE, THIS TAKES ON A DIFFERENT COMPLEXION

5     BECAUSE THE SORT OF IMPLICATION OR THE INFERENCE THAT'S

6     BEEN GOING ON THROUGHOUT HAS BEEN WELL, YOU KNOW, IT'S

7     LIKE A CRIME BUT IT MAY NOT REALLY BE LIKE A CRIME.

8          **MR. MCNAMARA:**  AND ALSO --

9          **THE COURT:**  -- AND THAT'S GOING TO, IF YOU START

10    TO THINK IN THOSE TERMS, THAT'S GOING TO CHANGE THE

11    EXPECTATIONS ABOUT THE TRIAL WORK, BECAUSE I'VE TRIED

12    NON-JURY CIVIL CASES AS THE JUDGE ALONE, AS I'M SURE MOST

13    OF THE JUDGES OR ALL OF THEM HAVE, AND THOSE ARE DIFFERENT

14    EXPERIENCES FROM TRYING A JURY TRIAL, A CIVIL JURY TRIAL.

15         FOR INSTANCE, I CAN START AND STOP THE CASE WHENEVER

16    I WANT, AND I CAN BREAK IT UP WHENEVER I WANT, AND I CAN

17    ASK QUESTIONS AND I CAN MAKE IT GO FAST OR SLOW.  SO I

18    CAN'T IMAGINE HAVING A NON-JURY CIVIL TRIAL IN SOME OTHER

19    CONTEXT WHERE I WOULD SIT UP HERE FOR DAYS OR WEEKS AND

20    LET THINGS JUST DRIBBLE OUT.  I MEAN, I'D BE SAYING, WELL

21    UNDER, WHAT IS IT RULE 41, I'M GOING TO GET TO THE MEAT OF

22    THIS AND I THINK RULE -- I HAVEN'T LOOKED AT IT IN AGES,

23    BUT I THINK RULE 41 ALLOWS YOU TO MAKE A RUNNING SET OF

24    FINDINGS.

25         ANYBODY KNOW WHAT RULE 41 SAYS?  I THINK YOU CAN --

1          **MR. RENFER:** I THOUGHT IT WAS -- WAS IT RULE 50?

2          **THE COURT:** MAYBE IT'S RULE 50. OKAY. YEAH,

3    IT'S RULE 50; 41 IS THE DISMISSAL.

4          IN A CIVIL CASE YOU CAN STOP AT SOME POINT, EVEN

5    DURING THE PARTY WHO HAS THE BURDEN OF PROOF'S

6    PRESENTATION OF EVIDENCE AND SAY, ALL RIGHT, THIS IS A

7    FACT. IT'S NOT ENCOURAGED BUT IT'S PERMITTED.

8          I DON'T NEED TO HEAR ANYMORE ABOUT THIS, THIS IS A

9    FACT OR THIS IS A FACT OR THIS IS A FACT. SO THERE ARE

10   TOOLS THAT MAY BE AS YET UNEXPLORED IN THE WAY THESE CASES

11   ARE TRIED. SO I'VE GOT 23 CASES, I BELIEVE, BY MY COUNT.

12         **MR. RENFER:** THAT'S CORRECT.

13         **THE COURT:** THIRTEEN OF WHICH ARE NOT IN THIS

14   COURT BECAUSE OF THE JURISDICTIONAL BAR; THEY'RE IN THE

15   4TH CIRCUIT?

16         **MR. RENFER:** I'M NOT SURE. MR. TIMMS.

17         **THE COURT:** HE'S BACK HERE.

18         **MR. RENFER:** HE'S BACK HERE, AND I THINK IT

19   WOULD BE 12 THAT ARE IN THE 4TH CIRCUIT. MR. TIMMS WOULD

20   HAVE BEEN THE NUMBER 13 BUT HIS 2241 IS STILL IN THE 4TH

21   CIRCUIT, BUT THE 4248 IS IN THIS COURT.

22         **THE COURT:** YOU ARE RIGHT. THERE ARE 11,

23   INCLUDING TIMMS, THAT ARE STILL IN THIS COURT.

24         **MR. RENFER:** THAT'S CORRECT.

25         **THE COURT:** AND ONLY ONE OF THEM, EDWARDS,

1   HERETOFORE HAS FILED A REQUEST FOR HEARING?

2          **MR. RENFER:**  THAT IS CORRECT.  AND THE

3   GOVERNMENT'S INITIAL DISCLOSURES HAVE BEEN PRODUCED IN A

4   TIMELY FASHION TO THE RESPONDENT, YOUR HONOR.

5          **THE COURT:**  OKAY.  YOU CAN HAVE A SEAT.  YOU

6   DON'T HAVE TO STAND UP FOR THESE THINGS.

7       YOU KNOW THERE'S TROUBLE WHEN I OPEN A RULE BOOK.

8          **MR. RENFER:**  I HOPE I WAS RIGHT ON RULE 50.

9          **THE COURT:**  IT'S RULE 52.

10         **MR. RENFER:**  THANK YOU, YOUR HONOR.

11         **THE COURT:**  RULE 52(C).  THAT'S WHAT I WAS

12  THINKING.

13      UNDER RULE 26, WHY DO WE HAVE TO WAIT ALL THIS TIME?

14  WHY CAN'T WE SCHEDULE A TRIAL AND JUST START IN ON THE

15  EVIDENCE AND THEN IF YOU FIND THAT THERE'S SOMETHING THAT

16  YOU DIDN'T KNOW ABOUT, YOU CAN TAKE A BREAK AND YOU CAN

17  LEARN IT.  WHY COULDN'T WE DO THAT, MR. MCNAMARA?

18         **MR. MCNAMARA:**  WELL, YOUR HONOR, WE DO NEED TIME

19  FOR THE GOVERNMENT TO GET THE DISCOVERY TO US.

20         **THE COURT:**  I'M SAYING LET'S FORGET ABOUT THE

21  DISCOVERY, LET'S JUST GO AHEAD AND START THE TRIAL AND IF

22  YOU HEAR SOMETHING OR LEARN SOMETHING THAT IS -- THAT

23  CATCHES YOU BY SURPRISE OR IS DISARMING, THEN SAY WELL, I

24  HAVEN'T THOUGHT ABOUT THAT, CAN WE HAVE A BREAK AND LET'S

25  TALK ABOUT IT?

1    I REALLY DON'T SEE WHY WE NEED TO SPEND MONTHS AND

2  MONTHS GETTING READY FOR SOMETHING THAT'S PROBABLY GOING

3  TO BE PRETTY SELF-EVIDENT WHEN WE GET INTO TRIAL.  I'M NOT

4  SURE THAT THERE ISN'T A HIERARCHY, WE TALKED ABOUT THAT

5  THE LAST TIME, AMONG THE FACTS IN THESE VARIOUS DETAINEES'

6  CASES, AND SOME OF THEM ARE GOING TO BE SO OVERWHELMINGLY

7  NEGATIVE, FROM YOUR CLIENT'S STANDPOINT, THAT YOU ARE NOT

8  GOING TO HAVE ANY CASE, YOU ARE NOT GOING TO HAVE ANY

9  DEFENSE.  YOUR DEFENSE IS GOING TO BE, WELL, SIX MONTHS

10  FROM NOW I'LL ASK FOR ANOTHER HEARING.

11         **MR. MCNAMARA:**  WELL, IF THEY DON'T GIVE US THE

12  DISCOVERY THEN WE DON'T GET THE PSYCHIATRIC REPORTS AND WE

13  DON'T GET WHAT THEY ARE BASING THEIR CASE UPON.

14         **THE COURT:**  YEAH, BUT YOU WILL HEAR ALL OF THAT

15  IN COURT.

16         **MR. MCNAMARA:**  BUT THAT WILL BE THE FIRST TIME

17  WE HEARD IT.

18         **THE COURT:**  SO WHAT.

19         **MR. MCNAMARA:**  IF WE KNEW IT IN ADVANCE, IT

20  WOULD BE NICE TO GET READY FOR IT TO BE ABLE TO KNOW HOW

21  TO CROSS-EXAMINE.

22         **THE COURT:**  WHAT GOOD WOULD KNOWING IT IN

23  ADVANCE DO YOU?  I DON'T REALLY SEE THAT BECAUSE IT'S A

24  NON-JURY CASE.  IF YOU SAY JUDGE, WE'RE SURPRISED AND

25  SHOCKED, WE HAD NO IDEA AND WE'RE NOT PREPARED TO RESPOND

1    TO THIS, GIVE ME UNTIL NEXT WEEK TO RESPOND, I MIGHT SAY

2    SURE.

3            **MR. MCNAMARA:**  WELL, WE MIGHT HAVE TO SAY THAT

4    AS SOON AS THE TRIAL STARTS WHEN WE HEAR THE FIRST

5    EVIDENCE BECAUSE WE JUST WON'T -- SEE, OUR EXPERTS --

6            **THE COURT:**  YEAH, BUT WE DON'T KNOW.  WE'RE

7    PLANNING FOR THE FLOOD BUT IT MAY NOT RAIN.

8            **MR. MCNAMARA:**  SEE, AT LEAST WITH SEEING THEIR

9    EXPERT REPORTS --

10           **THE COURT:**  ARE YOU GOING TO FOLD AND SAY WOW, I

11   DIDN'T REALIZE IT WAS THIS BAD, WE'LL STIPULATE HE SHOULD

12   BE DETAINED AND PUT HIM INTO TREATMENT?

13           **MR. MCNAMARA:**  WELL, NO, I DON'T THINK WE WOULD

14   DO THAT.  WE WANT TO HAVE OUR EXPERTS HELP US

15   CROSS-EXAMINE THEIR EXPERTS AND MAYBE CRITIQUE AND

16   DISCREDIT THEIR EXPERTS.

17      THEY ARE GOING TO BE SAYING THAT THEY'RE SEXUALLY

18   DANGEROUS AND WE NEED WAYS TO ATTACK IT.  OUR EXPERTS

19   DON'T HAVE ANYTHING TO WORK ON UNLESS WE GET THEIR

20   DISCOVERY.

21           **THE COURT:**  SURE, THEY HAVE SOMETHING TO WORK

22   ON.  THEY CAN LOOK AT THE MEDICAL HISTORY OF YOUR CLIENT.

23   YOU ARE ENTITLED TO THAT.  THEY'RE ENTITLED TO DO A

24   FORENSIC WORK-UP ON YOUR CLIENT, JUST LIKE THE GOVERNMENT

25   HAS DONE.

1     **MR. MCNAMARA:** WE HAVEN'T EVEN RECEIVED THAT.

2 WE JUST DON'T HAVE ANYTHING ON THESE PEOPLE, OTHER THAN

3 THE CERTIFICATE OF CERTIFICATION. WE HAVE THAT, THAT'S

4 TWO PAGES SAYING SOMETHING ABOUT OUR CLIENT. WE DON'T

5 KNOW WHAT ELSE THEY ARE BASING THEIR CASE ON.

6     **THE COURT:** WELL, THE CLIENT HAS A MEDICAL

7 HISTORY IN THE BOP THAT THE CLIENT HAS ACCESS TO.

8     **MS. LITTLE:** YOUR HONOR, IF I COULD BE HEARD

9 BRIEFLY. THE CONCERN THAT WE HAVE IS THE FACT THAT WE

10 DON'T HAVE THE MENTAL HEALTH EVALUATIONS AND THE BASIS FOR

11 THE DETERMINATION WHY THIS INDIVIDUAL HAS A MENTAL DISEASE

12 OR DEFECT THAT RENDERS HIM SEXUALLY DANGEROUS OR A RISK OF

13 DANGER IF HE'S RELEASED. WE NEED THAT KIND OF MEDICAL

14 DOCUMENTATION TO GIVE TO OUR EXPERTS FOR THEM TO REVIEW AS

15 WELL AS --

16     **THE COURT:** BUT THEY WILL HAVE TO SHOW THAT. IN

17 ORDER FOR THE GOVERNMENT TO PREVAIL, THEY WILL HAVE TO

18 SHOW THAT IN OPEN COURT.

19     **MS. LITTLE:** THAT'S CORRECT. AND THEY COULD

20 POSSIBLY RUSH TO GET THOSE THINGS DONE BUT THEN WE WILL BE

21 BACK AT SQUARE ONE BECAUSE WE STILL HAVEN'T HAD OUR DAY IN

22 TRIAL FOR OUR PARTICULAR CLIENTS.

23     **THE COURT:** YEAH, BUT I WOULD HAVE HEARD IT. IN

24 ORDER FOR THE GOVERNMENT TO PREVAIL, THEY WILL HAVE TO

25 SAY, I MARK THIS AS EXHIBIT 1, THIS IS THE MEDICAL AND

PSYCHIATRIC HISTORY OF JOHN SMITH, I OFFER IT INTO

EVIDENCE.  I MARK THIS AS EXHIBIT 2, THIS IS THE FORENSIC

EVALUATION OF HIS MENTAL HEALTH, I OFFER IT INTO EVIDENCE.

I CALL DR. JOHN BROWN.  DR. BROWN, TAKE THE STAND.  WHO

ARE YOU?  I'M THE WORLD'S FOREMOST AUTHORITY ON SEXUAL

PREDATORS AND PSYCHOLOGICAL ABERRANT BEHAVIOR.  WHAT DO

YOU KNOW ABOUT THE DETAINEE?  WELL, I HAVE GONE THROUGH

ALL OF HIS MEDICAL HISTORY, I HAVE GONE THROUGH ALL HIS

PSYCHIATRIC REPORTS.  IN MY OPINION, HE'S SEXUALLY

DANGEROUS AND SUFFERING FROM MAJOR MENTAL DISORDER.  ANY

QUESTIONS?

THEN YOU SAY, MY GOSH, WE HAVE NOT SEEN ANY OF THIS,

THIS IS ALL SHOCKING AND NEW TO US.  I SAY, GOOD, LET ME

READ IT AND YOU START READING IT TOO, AND WE'LL FIGURE OUT

WHAT QUESTIONS YOU OR I WANT TO ASK.

**MS. LITTLE:**  BUT WE NEED TO SUBMIT AN EXPERT ON

OUR SIDE, AT LEAST ONE.

**THE COURT:**  SO THEN THE GOVERNMENT RESTS AND I

SAY, DISMISSED, I DON'T THINK HE'S SEXUALLY DANGEROUS.

YOU DON'T NEED AN EXPERT BECAUSE YOU WON.  I SAY DENIED.

YOU DON'T HAVE AN EXPERT YET?  NO.  OKAY, I'LL GIVE YOU 20

DAYS TO ACCESS YOUR EXPERT, MAIL HIM ALL OF THESE FILES

AND COME BACK IN 20 DAYS, AND BRING YOUR EXPERT.

**MR. MCNAMARA:**  BUT, YOUR HONOR, OUR EXPERTS ARE

ALL OVER THE COUNTRY AND WE SEND THEM THIS STUFF AND THEN

THEY HAVE TO LOOK AT IT.  THEN THEY COME TO BUTNER TO

INTERVIEW OUR CLIENT.

**THE COURT:**  MAYBE YOU NEED TO FIND SOMEBODY IN

DURHAM AND JUST GO WITH THAT PERSON.

**MR. MCNAMARA:**  WE HAVE NOT HAD MUCH LUCK.

**THE COURT:**  GO TO GREENVILLE AND SEE IF YOU CAN

FIND SOMEBODY.  SOMEBODY IS WILLING TO STAKE THEMSELVES

OUT AS THE WORLD'S FOREMOST AUTHORITY ON THIS.

**MS. LITTLE:**  THE OTHER ISSUE IS, WE'RE ENTITLED

TO THE USE OF THE CIVIL DISCOVERY RULES AND WE DO INTEND

TO FLESH OUT, THROUGH USE OF INTERROGATORIES, REQUEST FOR

PRODUCTION, THINGS LIKE HOW WERE THESE INDIVIDUALS

SELECTED OUT OF THE VAST NUMBERS OF INDIVIDUALS IN THE

BUREAU OF PRISONS TO BE CERTIFIED.

**THE COURT:**  BECAUSE OF THE EQUAL PROTECTION

ISSUE.  THAT HASN'T BEEN FULLY VETTED YET.

**MS. LITTLE:**  EXACTLY.

**THE COURT:**  BUT YOU COULD DO THAT WHILE THESE

PEOPLE HAVE HEARINGS.  IF THEY LOSE THE FIRST HEARING,

DON'T THEY HAVE THE RIGHT TO COME BACK IN SIX MONTHS AND

GET ANOTHER HEARING OR REQUEST ANOTHER HEARING?

**MS. LITTLE:**  IT'S A DIFFERENT STANDARD THEN.

**MR. MCNAMARA:**  THE BURDEN OF PROOF SHIFTS THEN.

**THE COURT:**  OKAY.  THAT'S, YOU KNOW, A

DISTINCTION WITHOUT A DIFFERENCE PROBABLY.  IF YOU LOST,

1  THEN WHO CARES ABOUT THE BURDEN OF PROOF?

2          **MS. LITTLE:**  WE THINK IT'S PRETTY CRITICAL

3  BECAUSE, AGAIN, THE BURDEN RESTS ON THE GOVERNMENT

4  INITIALLY AND WE'RE DEFENDING OUR CLIENTS.  SO WE

5  BELIEVE --

6          **THE COURT:**  IT'S GOING TO BE 2015 AND NO ONE

7  WILL HAVE HAD A HEARING, IF YOU FOLLOW, YOU KNOW, YOUR

8  COURSE.

9          **MS. LITTLE:**  WE ANTICIPATE ACTUALLY THE SUMMER

10 WE CAN GET SOME OF THESE CASES TO TRIAL.

11          **MR. MCNAMARA:**  WE HAVE EIGHT CASES IN OUR OFFICE

12 HERE TODAY, SEVEN OF THEM WE HAVE NOT SEEN ANY DISCOVERY.

13 SO THEY NEED TO GIVE US THIS STUFF.  THEY HAVEN'T GIVEN IT

14 TO US YET AND THEN WE CAN, IF WE AT LEAST HAD THAT, THE

15 PROCESS WOULD GO QUICKER.

16          **MR. RENFER:**  YOUR HONOR, I UNDERSTAND WHAT THE

17 COURT IS SAYING.  I BELIEVE THROUGHOUT THIS PROCESS I

18 THINK THE PARTIES AND ATTORNEYS HAVE SEEN PRETTY CLEARLY

19 THAT FOR THE MOST PART THIS IS GOING TO BE A TRIAL OF

20 EXPERTS.

21          **THE COURT:**  I DON'T KNOW THAT.

22          **MR. RENFER:**  AND IT'S CRITICAL -- I UNDERSTAND.

23 IT IS CRITICAL FOR ANY EXPERT, OURS AS WELL AS THE

24 RESPONDENTS', TO BE ABLE TO HAVE THE COMPLETE RECORD, IF

25 YOU WILL, AS THE COURT HAS RECOGNIZED, IN ORDER TO GIVE AN

1  OPINION.

2  THE GOVERNMENT, IT HAS THE RECORDS THAT THE FORENSIC

3  PEOPLE AT BUTNER HAVE USED. BUT, IN ADDITION, THE

4  GOVERNMENT IS LIKEWISE SUBMITTING THESE RECORDS TO OUTSIDE

5  EXPERTS AS WELL. IT IS THOSE 1,500 TO UP TO 3,500 PAGES

6  OF DOCUMENTS THAT OUR PEOPLE ARE EXAMINING AND WE ARE THEN

7  TURNING OVER, UNDER RULE 26, THE REPORTS AS WELL AS ALL OF

8  THE INITIAL DISCLOSURES. IT'S BASED UPON THAT THAT THE

9  RESPONDENT IS GETTING THEIR EXPERT.

10  FROM THE STANDPOINT OF THE GOVERNMENT, WE SEE IT FAR

11  MORE -- WE BELIEVE THAT THE CASES WILL PROCEED MORE

12  EXPEDITIOUSLY BY PURSUING IT IN THAT FASHION. THAT'S THE

13  REASON THAT WE HAVE TALKED WITH COUNSEL AND OUR

14  SUGGESTING, I BELIEVE, THAT -- MR. MCNAMARA HAS SOME

15  PROPOSED IDEAS FOR SCHEDULING SOME OF THE CASES, TO GET

16  THESE CASES ON THE TRIAL CALENDAR AS QUICKLY AS POSSIBLE,

17  BUT RECOGNIZING THE NEED FOR BOTH PARTIES TO DEVELOP THEIR

18  CASES AS IN A NORMAL CIVIL CASE FOR THE EFFECTIVE ADVOCACY

19  FOR THEIR CLIENTS.

20  AGAIN, I UNDERSTAND THAT THE RESPONDENTS' ATTORNEYS

21  ARE ESPECIALLY CONCERNED ABOUT THAT IN LIGHT OF THE

22  DIFFICULTY THAT THEY HAVE HAD IN A NUMBER OF CASES WITH

23  THE -- NOT JUST THE COMMUNICATION BUT JUST THE

24  RELATIONSHIPS.

25  **THE COURT:** WELL, THEY'RE GOING TO END UP

1  GETTING FIRED IN ALL OF THE CASES AND BE STAFFED UP WITH

2  NO CLIENTS.  ALL THE CLIENTS ARE GOING TO BE OUT THERE

3  WITH PANEL ATTORNEYS.  I MEAN, I'M NOT ADVOCATING THAT BUT

4  THAT'S FORESEEABLE.

5       JUDGE BRITT HAS A COUPLE OF PEOPLE WHO WERE CERTIFIED

6  IN NOVEMBER OF '06, ONE NOVEMBER 2 OF '06.  THIS

7  NOVEMBER 2ND IT WILL BE FIVE YEARS.  I FIRST GOT AWARE OF

8  THIS AND BECAME ENGAGED IN OCTOBER OF '09, WHEN I THINK I

9  HAD MY FIRST HEARING IN COURT TO JUST DISCUSS THIS IN THE

10 *TIMMS* CASE.  HE HAD ALL OF THE 4248S AND I HAD A COUPLE OF

11 HABEAS, AND THAT WAS THE ONE THAT WAS THE LEAD.

12      SO JUST IN MY OWN EXPERIENCE, PUTTING ASIDE THE OTHER

13 JUDGES ON THE COURT, ALL OF 2010, SO THAT'S A YEAR, AND

14 PART OF 2009, THAT'S ANOTHER THREE OR FOUR MONTHS AND

15 ANOTHER MONTH HERE.  SO I HAVE BEEN IN THIS FOR ABOUT 16

16 OR 17 MONTHS WITH ABSOLUTELY NO TRACTION, ABSOLUTELY NOT

17 THE FIRST STEP FORWARD.

18      THIS FELLOW COMSTOCK, HE GOT CERTIFIED ON

19 NOVEMBER 2ND, SO HE'S BEEN IN IT FOUR YEARS LAST

20 NOVEMBER 2ND.

21          **MR. RENFER:**  HE WAS THE FIRST ONE, YOUR HONOR.

22          **THE COURT:**  YEAH, THERE'S ANOTHER ONE.  ANYWAY,

23 THERE'S SEVERAL FROM NOVEMBER OF '06 AND THEY HAVE BEEN IN

24 IT FOUR YEARS LAST NOVEMBER.  SO THEY'RE IN IT FOUR YEARS

25 AND CHANGE.  THERE'S NO HORIZON, IT'S JUST DARKNESS.

1    **MR. MCNAMARA:** IT STRESSES ME TOO, YOUR HONOR,

2    THAT IT'S TAKEN THIS LONG BUT THERE HAVE BEEN SO MANY

3    APPEALS GOING ON THAT HAVE SLOWED IT DOWN. I DON'T KNOW

4    WHAT THE ANSWER IS AND IT DOES IRRITATE THE CLIENTS,

5    THAT'S WHY DAILY THEY ARE FINDING REASONS TO KICK US OUT.

6    THEY EVEN REPORT US TO THE BAR.

7    **THE COURT:** YOU WILL HAVE CONFLICTS OF INTEREST

8    BASED ON THEIR GRIEVANCES POSSIBLY IN EVERY CASE, FOR ALL

9    YOU KNOW, AND YOU ARE GOING TO BE IN AN ETHICAL CONUNDRUM

10   OVER WHETHER PEOPLE CAN BE FILING BAR GRIEVANCES AND

11   REQUESTS FOR DISMISSAL AND WHETHER YOU CAN CONTINUE TO

12   REPRESENT THEM AND, YOU KNOW. DO YOU BECOME STANDBY

13   COUNSEL, DO WE HAVE -- IT'S A CIVIL CASE SO THEY DON'T

14   HAVE A GIDEON RIGHT.

15   **MR. RENFER:** YOUR HONOR, ONE COMMENT, AND I DO

16   UNDERSTAND WHY THE RESPONDENTS WOULD TAKE THIS POSITION.

17   BUT WHILE THERE WAS THE POSSIBILITY, AND IN SOME CASES

18   MAYBE THE PROBABILITY, THAT THE 4TH CIRCUIT, JUDGE BRITT'S

19   DECISION AND THE 4TH CIRCUIT'S DECISION WOULD BE UPHELD,

20   AND LIKEWISE THE SAME, WHILE THERE MIGHT BE THE

21   POSSIBILITY OR PROBABILITY THAT THE *TIMMS* DECISION WOULD

22   BE UPHELD, OBVIOUSLY NONE OF THE OR VERY FEW OF THE

23   RESPONDENTS WANTED TO HAVE ANY TYPE OF HEARING GO FORWARD.

24   IT'S UNDERSTANDABLE, ALTHOUGH IT'S REGRETTABLE FROM

25   THEIR STANDPOINT THAT IT'S BEEN SO LONG BECAUSE WE

1  RECOGNIZE LIKEWISE THAT THE REAL NEED TO MOVE QUICKLY.  I

2  THINK, YOUR HONOR, I GUESS WE'RE SUGGESTING THAT HAVING A

3  SCHEDULING ORDER THAT ALL PARTIES CAN LOOK AT AND THEY CAN

4  COUNT ON, THAT WILL ALLEVIATE A LOT OF THE PROBLEMS.

5      AS I SAID, WE BELIEVE THAT A SCHEDULING ORDER THAT WE

6  HAVE JOINTLY LOOKED AT FOR EACH OF THESE CASES GOING

7  FORWARD GIVES STABILITY, IT GIVES ACCOUNTABILITY AND IT

8  WILL MOVE THINGS AS EXPEDITIOUSLY AS POSSIBLE, GIVEN THE

9  REASONABLE ASSURANCE THAT THIS IS THE TIMELINE.  WE WOULD

10 RECOMMEND --

11      **THE COURT:**  SEE, I WANT TO START A TRIAL OR

12 TRIALS AND JUST GO WITH IT.  IF I HAVE DONE SOMETHING THAT

13 IS IRREGULAR, I CAN ALWAYS GRANT A NEW TRIAL.  EVERYTHING

14 THAT I DO HERE THAT'S INTERLOCUTORY IS CORRECTABLE, EVEN

15 AT THIS LEVEL.  I THINK THAT THAT, TO ME, IS MORE

16 APPEALING, NO PUN INTENDED, THAN WAITING AND RELYING ON A

17 SET OF RULES THAT SEEM TO TAKE ON A LIFE EXISTENCE OF

18 THEIR OWN.

19      I MEAN, I'M READY TO START A TRIAL.  I'LL LET YOU PUT

20 UP WHATEVER YOU HAVE AND HAVE THE OPPOSING SIDE PUT UP

21 WHATEVER THEY HAVE AND COME TO SOME TENTATIVE CONCLUSIONS

22 ABOUT THE PERSON.  I MEAN, IF YOU ARE AFRAID THAT I'M

23 GOING TO LET EVERYBODY GO OR IF YOU ARE AFRAID THAT I'M

24 GOING TO DETAIN EVERYONE PERMANENTLY, THEN BOTH OF YOUR

25 FEARS ARE NOT REALISTIC BECAUSE I DON'T HAVE ANY

1  FOREORDAINED IDEA ABOUT IT.

2      IT'S NOT LIKE I RULED IN *TIMMS* THIS WAY AND *BRONCHEAU*

3  THIS WAY, SO THAT MEANS WHEN I HEAR THE FACTS I'M GOING TO

4  RULE FOR THE DEFENDANT OR THE GOVERNMENT.  NOT AT ALL.

5      YOU NEED TO GET IN THERE AND SEE, BECAUSE I THINK THE

6  TRIAL EXPERIENCE OF PUTTING ON YOUR EVIDENCE IS GOING TO

7  GIVE MORE CLARITY TO THESE CASES AND WE'RE GOING TO BE

8  ABLE TO SEE OH, THAT'S WHAT IT'S ALL ABOUT, OKAY, NOW I

9  UNDERSTAND.  OR, WHY ARE THEY DOING THIS?  NOT ONLY THE

10  JUDGE BUT THE LAWYERS WILL HAVE A BETTER PERSPECTIVE ABOUT

11  THE CASES ONCE YOU GET IN THERE AND START TO TRY IT.

12          **MR. MCNAMARA:**  BUT, YOUR HONOR --

13          **THE COURT:**  THAT'S ALWAYS THE CASE.  YOU ARE

14  BOTH LIKE ME, WE HAVE BEEN AROUND FOR A LONG TIME IN THE

15  TRIAL PRACTICE OF LAW.  IF YOU THINK ABOUT IT, I THINK YOU

16  WOULD AGREE WITH ME THAT YOU KNOW MORE ABOUT THE CASE WHEN

17  YOU TRIED IT THAN YOU DO WHEN YOU JUST PREPARED IT.

18          **MR. MCNAMARA:**  BUT, YOUR HONOR, I'M NOT AFRAID

19  OF WHAT YOU JUST SAID, I'M MORE AFRAID OF OUR CLIENTS

20  IMMEDIATELY WANTING TO KICK US OUT OF THE CASE.

21          **THE COURT:**  WELL, I'LL BRING THE CLIENT IN AND

22  SAY, HERE'S YOUR CHOICE, I'M GOING TO START THE TRIAL NEXT

23  TUESDAY AT TEN, OR YOU CAN JUST STAY IN MARYLAND

24  INDEFINITELY AND NOBODY WILL CARE ABOUT YOU ANYMORE.

25          **MR. MCNAMARA:**  WELL, THESE MEN ARE MORE

1  INTELLIGENT THAN A LOT OF THE CRIMINAL CLIENTS WE HAVE HAD

2  AND THEY STUDY THE LAW AND THEY SIT UP THERE AND THEY HAVE

3  COMPUTER ACCESS.  THEY HAVE READ ALL THE DECISIONS SO FAR.

4  SO I KNOW THEY ARE GOING TO BE SO AGITATED THAT WE'RE

5  GOING TO GET A LOT OF MOTIONS.

6       IT KIND OF HURT ME THIS WEEK, PETER EBEL, WHO'S ONE

7  OF THE ONES ON FOR TODAY, WELL DARN IT IF HE DIDN'T SEND

8  ME A NASTY LETTER JUST ATTACKING ME ON EVERYTHING I DID.

9  HE TOLD ME HE WOULD REPORT ME TO THE BAR.  HE SENT ME A

10  PROPOSED MOTION TO WITHDRAW THAT SOUNDED TERRIBLE.  SO I

11  IMMEDIATELY FILED A MOTION TO WITHDRAW, TRYING TO BEAT HIM

12  TO IT.  THAT'S GOING TO HAPPEN, I'M AFRAID ON EVERY ONE

13  OF --

14       **THE COURT:**  HE'S THE MIDNIGHT RIDER, PAUL

15  REVERE?  HE IS THE ONE THEY PICKED UP AT DEVENS AND PUT IN

16  THE CAR AND DROVE HIM HERE AND GAVE US A FULL ACCOUNT OF

17  HIS TRAVELS?

18       **MR. MCNAMARA:**  THAT'S RIGHT.  I THOUGHT THINGS

19  WERE GOING WELL WITH ME, BUT OBVIOUSLY NOT.  I CAME INTO

20  WORK AFTER THE HOLIDAY TUESDAY AND FOUND THAT LETTER.

21       SO THAT'S TYPICAL OF WHAT WE'RE GOING TO SEE WITH THE

22  OTHERS.  THEY ARE GOING TO KNOW WE'RE NOT READY FOR TRIAL.

23  THEY ARE NOT GOING TO UNDERSTAND YOUR PERSPECTIVE ON THIS.

24       WE DO WANT TO GET RID OF ALL OF THEM, IF WE CAN.  THE

25  WORKLOAD ISSUE WOULD THEN BE SOLVED, BUT I DON'T KNOW THAT

1   WE HAVE ENOUGH PANEL ATTORNEYS TO COVER ALL OF THESE

2   CASES.  SO I STILL THINK -- I WORKED WITH --

3          **THE COURT:**  IS THE LEGAL MAXIM, "NO GOOD DEED

4   GOES UNPUNISHED" THE OPERATIVE RULE HERE?

5          **MR. MCNAMARA:**  I DO HAVE HERE, YOUR HONOR, SOME

6   PROPOSED SCHEDULING ORDERS THAT I WORKED WITH MR. RENFER

7   ABOUT FOR EACH OF THE EIGHT CASES WE HAVE TODAY.  IT CALLS

8   FOR THEM TO START WORKING ON DISCOVERY AND GET IT TO US

9   WITHIN 60 DAYS, AND THEN 60 DAYS FOR US TO GET OUR

10  EXPERTS.

11      I THINK AFTER WE HAVE THAT TIME PERIOD, YOU COULD

12  MOVE QUICKLY, EVEN THOUGH WE WON'T HAVE TIME TO DO ANY

13  DEPOSITIONS OR ANY INTERROGATORIES.  WE COULD SKIP THAT

14  STAGE.  SO I THINK YOU COULD PROBABLY START A TRIAL.

15         **THE COURT:**  THERE'S NEVER BEEN AN INTERROGATORY

16  PROPOUNDED OR ANSWER THAT'S WORTH HAVING.

17         **MR. MCNAMARA:**  THAT'S FINE.

18         **MR. RENFER:**  I WOULD AGREE WITH YOU.

19         **MR. MCNAMARA:**  BUT JUST TO GET THE DISCOVERY AND

20  GET OUR EXPERTS ON BOARD, OR AT LEAST HAVE ENOUGH TIME TO

21  SEE WHAT THE EVIDENCE WILL SHOW AGAINST OUR CLIENTS.  WE

22  CAN HAVE TRIALS BY THE END OF THE SUMMER.

23         **MR. RENFER:**  YOUR HONOR, WE WOULD ENCOURAGE THAT

24  AS WELL.  WE FEEL FAIRLY STRONGLY THAT IN ORDER TO

25  ADEQUATELY REPRESENT THE UNITED STATES IN THIS, WE MUST

1   HAVE A PERIOD OF TIME TO DEVELOP INITIAL DISCLOSURES AND

2   EXPERTS.  FRANKLY, NOT ON BEHALF OF THE GOVERNMENT BUT ON

3   BEHALF OF THE INTEGRITY OF THE TRIAL, WE FEEL THAT THE

4   RESPONDENTS MUST HAVE A PERIOD OF DEVELOPING THEIR INITIAL

5   DISCLOSURES AND DEVELOPING THEIR OUTSIDE EXPERT AS WELL,

6   AND WE WOULD URGE THAT ON THE COURT.

7       **THE COURT:**  WELL, IF I SET TRIALS FOR FEBRUARY,

8   WHAT WOULD YOU DO, GO TO THE COURT OF APPEALS AND ASK FOR

9   A MANDAMUS STOPPING ME FROM TRYING THE CASES BECAUSE I'M

10  TOO EAGER TO DISPENSE JUSTICE?  HOW WOULD YOU FRAME THAT

11  MOTION?

12      **MR. MCNAMARA:**  YOUR HONOR --

13      **THE COURT:**  THE COURT IS RACING TOWARD JUSTICE

14  AND WE NEED TO PUT THE BRAKES ON THIS?

15      **MR. MCNAMARA:**  I'D HATE TO HAVE TO DO THAT.

16      **THE COURT:**  THAT WOULD BE AN EMBARRASSING

17  MOTION.  ONE OF A KIND.  TRIAL TOO SOON?

18      **MR. MCNAMARA:**  I WOULDN'T PERSONALLY DO THAT.  I

19  WOULD LET THE TRIAL GO AHEAD AND THEN COMPLAIN, MAYBE.

20  THE FIRST WITNESS COMES ON --

21      **THE COURT:**  BUT YOU WOULDN'T COMPLAIN IF YOU

22  WON, RIGHT?

23      **MR. MCNAMARA:**  PARDON ME?

24      **THE COURT:**  YOU CAN ONLY APPEAL IF YOU LOSE.  OR

25  WOULD YOU APPEAL AFTER WINNING?

1          **MR. MCNAMARA:**  NO, WE WOULDN'T APPEAL AFTER

2    WINNING.

3          **THE COURT:**  JUST FOR THE HONOR?

4          **MR. MCNAMARA:**  I GUESS I TRIED TO PERSUADE YOU

5    TO GIVE ME MORE TIME.  THE FIRST WITNESS, THE FIRST

6    STATEMENT, I'M GOING TO HAVE TO SAY, I DIDN'T KNOW HE WAS

7    GOING TO SAY THAT.

8          **THE COURT:**  NEITHER DID I.  THAT'S WHAT A TRIAL

9    IS ALL ABOUT.

10         **MR. MCNAMARA:**  BUT I HAVE TO CROSS-EXAMINE HIM.

11         **THE COURT:**  THE PERFECT TRIAL IS WHERE NEITHER

12   SIDE TELLS EACH OTHER ANYTHING, AND THEN YOU DEVELOP IT IN

13   COURT AND YOU HAVE TO ACTUALLY THINK AND RESPOND.  THAT'S

14   THE WAY TRIALS WERE FOR SEVEN, EIGHT, 900 YEARS UNTIL

15   SOMEONE INVENTED DISCOVERY.

16     I MEAN, I HAVE BEEN TOLD BY PEOPLE INFINITELY MORE

17   SKILLED THAN I WILL EVER BE THAT IF YOU ARE THE PLAINTIFF

18   AND YOU DON'T HAVE A LAY DOWN CASE THE DAY YOU FILE IT,

19   YOU SHOULDN'T FILE IT.

20         **MR. MCNAMARA:**  BUT IF WE FOLLOW YOUR PROCEDURE,

21   YOUR HONOR, AND TAKE MR. EBEL AS AN EXAMPLE.

22         **THE COURT:**  I WAS GOING TO TAKE MR. TIMMS

23   BECAUSE HE'S GOT A FAIRLY, WHAT'S THE RIGHT WORD, ACUTE

24   SET OF FACTS.  HE DOESN'T HAVE A VERY GOOD SET OF FACTS.

25         **MR. MCNAMARA:**  BUT MR. TIMMS HAS A NEW LAWYER

1  SITTING BACK THERE THAT JUST GOT INTO THE CASE LAST WEEK,

2  MR. TARLTON, AND THAT'S EVEN WORSE THAN WHAT WE HAVE.

3  HE'S ONLY HAD A WEEK SO FAR AND I DON'T THINK HE'S MET

4  MR. TIMMS YET.

5       **THE COURT:**  OKAY.  WELL, I MADE A LIST OF

6  FAVORITES HERE.  SOME OF THE ONES THAT I WOULD THINK OF

7  TRYING FIRST ARE JOHNSON, HALL, WOODEN, EDWARDS.  I MEAN,

8  I BASICALLY COMBED THROUGH THE ONES THAT ARE STILL IN THIS

9  COURT AND THOSE WOULD BE THE ONES THAT I WOULD BE

10  INTERESTED IN GOING INTO FIRST.

11       EDWARDS, WE JUST HAD HIM THE OTHER DAY AND HE'S

12  GOT -- HE HAS A REQUEST.  TIMMS AND, AS I SAID, JOHNSON,

13  HALL, WOODEN.

14       **MR. MCNAMARA:**  BUT, YOUR HONOR, I BET ANYTHING

15  WE'RE GOING TO HAVE EACH OF THESE MEN SITTING HERE

16  SCREAMING, MY LAWYER IS NOT READY AND HE'S LET THIS HAPPEN

17  AND I'M GOING TO CALL THE STATE BAR.  WE'RE GOING TO HAVE

18  PROBLEMS.

19       **THE COURT:**  I CAN DEAL WITH THAT.  I CAN SAY TO

20  THEM:  WELL, YOU'RE GOING TO STAY WHERE YOU ARE FOR

21  HOWEVER LONG IT TAKES TO GET YOUR COMPLAINTS IRONED OUT

22  AND IF THAT'S YOUR ELECTION, IF YOU ELECT TO DO THAT, THEN

23  I CAN'T PROTECT YOU FROM YOURSELF, SO BACK YOU GO.

24       **MR. CRAVEN:**  JUDGE, YOU MENTIONED JOHNSON AS THE

25  FIRST ONE ON YOUR SHORT LIST THERE.

1        **THE COURT:** YES.

2            **MR. CRAVEN:** I REPRESENT HIM.

3            **THE COURT:** IN THE 4248?

4            **MR. CRAVEN:** YES, SIR. I LIKE MOST OF WHAT YOU

5    HAD TO SAY AT THIS POINT.

6            **THE COURT:** SHOULD I FEEL COMFORT IN THAT?

7            **MR. CRAVEN:** I, TOO, WANT TO MOVE IT ALONG AND I

8    THINK A MINIMAL TIME, IF AT ALL, ON DEPOSITIONS AND

9    INTERROGATORIES WOULD BE ALL THAT'S NEEDED. I'M PERFECTLY

10   WILLING TO MAKE, AS MR. MCNAMARA INDICATED, TO ESSENTIALLY

11   SKIP THAT STAGE.

12           **THE COURT:** SO IT'S FORESEEABLE THE OUTCOME WILL

13   BE THAT THEY WILL FILE A GRIEVANCE AGAINST BOTH OF US AND

14   WE'LL BOTH BE OUT OF THE CASE?

15           **MR. CRAVEN:** WELL, PETER EBEL, HE ALSO

16   COMPLAINED THAT I HAVE SPOKEN UP IN MR. MCNAMARA'S

17   DEFENSE. I TOLD EBEL THAT HE OUGHT TO BE THANKFUL THAT HE

18   HAD TOM MCNAMARA REPRESENTING HIM. SO NOW EBEL THINKS --

19           **THE COURT:** YOU ARE IN CAHOOTS WITH THE PUBLIC

20   DEFENDER?

21           **MR. MCNAMARA:** HE'S GOING TO REPORT HIM TO THE

22   BAR FOR RECOMMENDING ME.

23           **THE COURT:** GUILT BY ASSOCIATION. VICARIOUS

24   LIABILITY IN FEDERAL COURT.

25           **MR. CRAVEN:** ON *JOHNSON*, I'M WILLING TO SKIP THE

1  DEPOSITION.

2       **THE COURT:**  YOU ARE WILLING TO GO TO LIGHT SPEED

3  ON THIS, RIGHT?

4       **MR. CRAVEN:**  I DON'T HAVE THE DISCOVERY YET.

5       **THE COURT:**  BUT YOU ARE NOT GOING TO GET IT.  NO

6  ONE IS GOING TO GET DISCOVERY.  THAT'S AN ILLUSION.

7       **MR. CRAVEN:**  I DON'T KNOW WHAT THEIR PROBLEM IS

8  WITH HIM.  ALL I HAVE IS THE BALD CERTIFICATION.

9       **THE COURT:**  WELL, YOU HAVE YOUR CLIENT.  YOU'VE

10  GOT YOUR CLIENT.  THEY HAVE THE DISCOVERY BUT YOU HAVE

11  YOUR CLIENT; YOU CAN TALK TO YOUR CLIENT.

12       **MR. CRAVEN:**  THAT'S TRUE, AND I'M GOING TO MEET

13  WITH HIM ON TUESDAY.  AS SOON AS THEY GIVE ME THE

14  DISCOVERY -- AND MUCH OF THE DISCOVERY, I MIGHT ADD, I

15  TOOK 1,600 PAGES OF IT IN ANOTHER CASE HOME THE OTHER

16  NIGHT AND LOOKED THROUGH IT.  I FOUND FOUR PAGES ON THE

17  FACT THAT THIS GUY HAD WAX STUCK IN HIS EAR.  WELL, I'M

18  NOT INTERESTED IN THAT, NEITHER ARE YOU.

19       **THE COURT:**  RIGHT.

20       **MR. CRAVEN:**  THERE'S AN AWFUL LOT IN THE

21  DISCOVERY MATERIAL THAT WE DON'T NEED.  I DON'T CARE ABOUT

22  WHETHER HE'S GETTING VITAMIN B12 SHOTS OR NOT.  BUT IF

23  THEY WOULD GIVE US THE GIST OF THE DISCOVERY, THE

24  SUBSTANTIVE DISCOVERY, SO TO SPEAK, THE FORENSIC AND

25  PSYCHIATRIC STUFF ON JOHNSON, I WILL BE READY IN 60 DAYS.

1    I JUST WANTED TO SPEAK UP BECAUSE YOU WERE MENTIONING

2 JOHNSON.

3         **THE COURT:**  JOHNSON IS A D. C. CO-DEFENDER, SO

4 HE DOESN'T HAVE SUPERVISED RELEASE.

5         **MR. CRAVEN:**  NO.  HE'S A D. C. PAROLE VIOLATOR.

6         **THE COURT:**  SO HE COULDN'T FIT INTO MY SHOEHORN

7 OF *BRONCHEAU* BECAUSE THERE'S NOTHING TO PUT HIM OUT ON.

8         **MR. CRAVEN:**  NO.  I TRIED *BRONCHEAU* ON HIM AND

9 IT WAS NOT A GOOD FIT.

10         **THE COURT:**  IT DOESN'T WORK BECAUSE HE DOESN'T

11 HAVE REMAINING SUPERVISION.

12         **MR. CRAVEN:**  A NUMBER OF US ARE PULLING FOR

13 *BRONCHEAU*.

14         **THE COURT:**  COVER YOUR BET.

15         **MR. CRAVEN:**  BUT WE CAN BE READY IN JOHNSON'S

16 CASE FAIRLY QUICKLY IF THEY WILL GIVE US THE SUBSTANTIVE

17 DISCOVERY.  THE MORE THEY LEAVE OUT ABOUT HIS RUNNY NOSE

18 AND EAR WAX, THAT WILL SAVE TIME, TOO.

19         **THE COURT:**  YEAH.  HE HAS A CHARGE OF SEXUALLY

20 ASSAULTING AN EIGHT YEAR OLD GIRL AND HE HAD A CONVICTION

21 OF ASSAULT WITH INTENT TO RAPE AND A SMALL TERM FOR

22 ASSAULT WITH INTENT TO KIDNAP.  AS I SAID, HE'S A D.C.

23 CO-OFFENDER AND HE MIGHT BE A GOOD ONE TO START WITH.

24         **MR. CRAVEN:**  WELL, HE MIGHT BE.  I CAN'T

25 REMEMBER IF YOU HAVE RANDALL COOK OR NOT.

1      **THE COURT:**  COOK IS NOT ONE OF THE ONES THAT IS

2  OPEN.

3      **MR. CRAVEN:**  I CAN'T KEEP ALL THESE CASES

4  STRAIGHT IN MY MIND SOMETIMES.

5      **THE COURT:**  TODAY IS THE 20TH.  I MEAN, THIS IS

6  AGAINST MY BETTER JUDGMENT, BUT OUT OF DEFERENCE I'M

7  WILLING TO SET IT FOR MARCH 21, FOR THE BEGINNING OF THE

8  TRIAL.  WE CAN JUST PLAN TO START THE TRIAL ON THE 21ST

9  AND HAVE HIM HERE.

10      **MR. CRAVEN:**  THAT WON'T WORK IF THEY GIVE ME THE

11  DISCOVERY MATERIAL ON THE 19TH.  I NEED MORE INFORMATION

12  ABOUT HIM THAN I HAVE FROM THE GOVERNMENT.

13      **THE COURT:**  OKAY.

14      **MR. CRAVEN:**  AND THEN I NEED TO --

15      **THE COURT:**  HAVE YOU GOTTEN ANYTHING?

16      **MR. CRAVEN:**  JUDGE, I DON'T BELIEVE I HAVE.  I

17  DON'T BELIEVE I HAVE IN THIS CASE.  I GOT THE FILE FROM

18  HART MILES, MY PREDECESSOR, BUT NO, I DON'T HAVE ANY

19  DISCOVERY MATERIAL YET FROM THE GOVERNMENT.

20      **THE COURT:**  ALL RIGHT.  WELL, LET'S HAVE A

21  PRETRIAL CONFERENCE THEN RIGHT NOW AND I'D ASK THE

22  GOVERNMENT TO GIVE HIM EVERYTHING YOU EXPECT TO OFFER BY

23  FEBRUARY 11 AND THEN WE'LL BE READY FOR TRIAL BY MARCH 21.

24      WE'LL TAKE A BRIEF RECESS.

25      (RECESS TAKEN.)

1      **THE COURT:** MR. RENFER, ISN'T IT TRUE THAT WHEN

2   YOU CERTIFY SOMEBODY, THE POINT AT WHICH THEY WERE GOING

3   TO BE PUT INTO THIS PROGRAM, THAT THERE WAS SOME PACKET OF

4   MATERIAL THAT THE REVIEWER RELIED ON IN ORDER TO MAKE THE

5   CERTIFICATION?

6      **MR. RENFER:** I'M NOT SURE IF IT'S A PACKET OF

7   MATERIAL, BUT THE MEDICAL RECORDS, THE PSYCHOLOGICAL

8   RECORDS, ET CETERA, AS WELL AS NOT JUST THAT BUT THE

9   CRIMINAL RECORD AND BOP'S INTERNAL ACTIVITY RECORDS, ALL

10  OF THAT WAS REVIEWED, YES.

11     **THE COURT:** CAN'T WE GET THAT DISCRETE

12  INFORMATION AND PROVIDE IT TO THE LAWYER TO START THE BALL

13  ROLLING?

14     **MR. RENFER:** YOUR HONOR, WHEN WE WERE FIRST

15  DEVELOPING THIS, THE FEDERAL PUBLIC DEFENDER'S OFFICE WAS

16  VERY CONCERNED ABOUT GETTING ALL OF THE MATERIAL THAT

17  MIGHT BE AVAILABLE, AND WE ASSURED THEM THAT WE WOULD

18  PROVIDE ALL OF IT.  IN FACT, YOUR HONOR, WE CAN PROVIDE

19  ALL OF THE MATERIAL TO THEM, EVEN THOUGH MR. CRAVEN WAS

20  KIND OF TALKING ABOUT OTHER MEDICAL RECORDS THAT HE DIDN'T

21  CARE ABOUT, IT'S JUST AS EASY TO PROVIDE ALL OF IT AS IT

22  IS FOR US TO TRY TO WEED OUT DISCRETE ITEMS.

23     IF OUR EXPERT IS CROSS-EXAMINED AND SAID, YOU KNOW,

24  WHAT ALL DID YOU LOOK AT, AND GIVES THIS MATERIAL THAT, IN

25  FACT, WE HAD NOT INCLUDED, WE HAVE PROBLEMS.  SO IT'S JUST

1  AS EASY FOR US TO GIVE THEM THE COMPLETE UNIVERSE OF

2  MATERIALS.  AND, FRANKLY, WE CAN DO IT IN JUST THE SAME

3  AMOUNT OF TIME.

4          **THE COURT:**  ALL RIGHT.  WELL, WHAT'S HOLDING

5  THAT BACK?

6          **MR. RENFER:**  WELL, FRANKLY, YOUR HONOR, WHAT'S

7  HOLDING IT BACK WAS, AS I INDICATED EARLIER, THE MANY,

8  MANY RESPONDENTS, AND MOST OF THE RESPONDENTS DID NOT WANT

9  TO GO FORWARD WITH DEVELOPING A HEARING WHILE THERE WAS A

10  CHANCE OR PROBABILITY CONCERNING THE APPELLATE CASES.

11  ONLY AFTER *COMSTOCK* 2 AND *TIMMS* WAS DECIDED, HAVE THE

12  RESPONDENTS SAID OKAY, WE'RE GOING TO HAVE TO HAVE

13  HEARINGS.  SO WE HAVE, AT THAT POINT, STARTED ON

14  DEVELOPING THESE.

15      IN FACT, THE FIRST 15 -- DURING THE APPELLATE

16  PROCESS, THERE WERE A NUMBER THAT DID REQUEST HEARINGS,

17  ABOUT 15 OR 16, AND WE HAVE DEVELOPED ALL OF THOSE RECORDS

18  AND HAVE DELIVERED THOSE TO OPPOSING COUNSEL.  NOW, WE

19  HAVE ALSO STARTED ON DEVELOPING THE OTHERS BEYOND THE 15,

20  AND WE WILL BE CONTINUING TO DO THAT.

21      WHAT WE NEED FROM THE COURT AND THE COURTS IS SOME

22  GUIDANCE BECAUSE THERE ARE BASICALLY, EXCEPT FOR THE 12

23  PLUS 15, SO BASICALLY THERE'S ANOTHER 60 OR 65.  FOR

24  INSTANCE, IF THE COURT WANTED JOHNSON TO GO FORWARD, WE

25  WOULD IMMEDIATELY START ON THAT.

1          **THE COURT:** OKAY.

2          **MR. RENFER:** IF THE COURT WOULD PICK ANOTHER

3 ONE, WE WOULD START ON THAT.

4          **THE COURT:** OKAY. I'LL DO THAT. I DON'T HAVE

5 ANY EXPECTATION ABOUT THE CASES THAT THE OTHER JUDGES

6 HAVE. THAT'S THEIR BUSINESS. I'M NOT GOING TO CRITIQUE

7 IT OR SUPPORT IT.

8          **MR. RENFER:** SURE.

9          **THE COURT:** BUT I WOULD LIKE TO HAVE THE

10 DISCOVERY THAT YOU JUST TALKED ABOUT PROVIDED IN *EDWARDS*,

11 IN *JOHNSON*, IN *HALL*, IN *WOODEN*, AND *TIMMS*. THOSE ARE FIVE

12 CASES. YOU CAN REALISTICALLY EXPECT THAT THEY'LL JUMP TO

13 THE HEAD OF THE LIST BECAUSE IT'S MORE LIKELY, GIVEN MY

14 HISTORY IN THE PAST 16 MONTHS -- YOU HAVEN'T YET TALKED TO

15 A DISTRICT JUDGE OTHER THAN *COMSTOCK*, HAVE YOU?

16          **MR. RENFER:** I DON'T QUITE UNDERSTAND THE

17 QUESTION.

18          **THE COURT:** YOU HAVEN'T HAD A HEARING WITH A

19 U.S. DISTRICT JUDGE OTHER THAN ME?

20          **MR. RENFER:** NO, THAT'S CORRECT.

21          **THE COURT:** THAT'S WHAT I THOUGHT. THAT'S FINE,

22 BUT I'M JUST TELLING YOU THAT IRRESPECTIVE OF WHAT GOES ON

23 IN THE OTHER 90 CASES, MINE ARE PROBABLY GOING TO BE THE

24 SQUEAKY WHEEL BECAUSE I'M THE ONLY DISTRICT JUDGE WHO'S

25 HAVING ISSUES WITH IT AND PUSHING IT.

1    **MR. RENFER:**  YOUR HONOR, IF I MIGHT, THOSE ARE

2   FIVE CASES, OKAY.  WE WOULD ASK THAT YOU STAGGER SOMEWHAT

3   THESE BECAUSE WE WOULD NEED TO -- IF WE CAN NOT DO IT,

4   YOUR HONOR, WE WOULD NEED TO FILE A MOTION TO CONTINUE.

5    **THE COURT:**  ALL RIGHT.  LET'S GIVE THEM A

6   HIERARCHY THEN.  I'LL GIVE YOU ONE TO FIVE.  JOHNSON,

7   NUMBER ONE; EDWARDS, NUMBER TWO; TIMMS, NUMBER THREE;

8   HALL, NUMBER FOUR; AND WOODEN, NUMBER FIVE.  JUST

9   INTERNALLY PROCEED ACCORDINGLY.  IF NUMBER FIVE IS QUICKER

10  FOR YOU TO DO WHEN YOU LOOK AT IT, THEN DO FIVE AND, YOU

11  KNOW --

12   **MR. RENFER:**  WELL, YOUR HONOR, ACTUALLY EDWARDS

13  IS NUMBER TWO BUT EDWARDS IS ALREADY DONE, FROM OUR

14  STANDPOINT.

15   **THE COURT:**  ALL RIGHT.  YOU'RE IN GOOD SHAPE.

16   **MR. RENFER:**  WHAT I'M SAYING IS, WE WILL DO

17  THESE AS EXPEDITIOUSLY AS POSSIBLE.  I DON'T KNOW IF THE

18  COURT WANTS A TIMELINE ON IT, BUT WE WILL START ON THESE.

19  I CAN SAY PROBABLY WE COULD GET, WITH EDWARDS OUT OF THE

20  WAY, THAT WOULD LEAVE FOUR OF THEM.  WE COULD PROBABLY

21  GET -- JOHNSON, I DON'T BELIEVE -- I THINK WE WOULD NEED

22  45 DAYS ON JOHNSON, YOUR HONOR.  MR. TIMMS, WE CAN DO IN

23  30 DAYS.  HALL, I DON'T KNOW ABOUT HALL OR WOODEN, YOUR

24  HONOR.  I'D HAVE TO GET BACK WITH YOU.

25   **THE COURT:**  LET'S COME BACK ON FEBRUARY 11 AT 11

1   O'CLOCK AND SEE WHERE WE ARE ON THESE FIVE.

2           **MR. RENFER:** FEBRUARY 11. THAT'S FINE, YOUR

3   HONOR. THAT WILL BE GREAT.

4       I APPRECIATE THE FACT THAT THE COURT IS NOT PUTTING,

5   AT THIS POINT, PUTTING A DEADLINE ON US. WE WILL BE ABLE

6   TO REPORT TO YOU WHAT WE CAN DO AND WE WILL DO IT AS

7   EXPEDITIOUSLY AS POSSIBLE.

8       THE COURT, I KNOW, UNDERSTANDS THAT WE WILL ALSO BE

9   DEVELOPING INITIAL DISCLOSURES ON MULTIPLE OTHER CASES FOR

10   THE OTHER JUDGES. OBVIOUSLY THAT COMES BACK TO THE

11   RESOURCES THAT THE BUREAU OF PRISONS HAS TO DEVOTE TO

12   THESE.

13           **THE COURT:** YEAH. BUT I BELIEVE, AND I'M GOING

14   TO TELL YOU THAT I'M GOING TO SET TRIAL DATES, AND I

15   BELIEVE THAT BY GETTING LIVE IN COURT WITH THE TWO LAWYERS

16   AND WHOEVER THE WITNESS WANTS TO BE, WE'RE GOING TO MOVE

17   THESE CASES ALONG.

18       SO YOU ARE GOING TO HAVE EITHER PEOPLE COMMITTED OR

19   PEOPLE RELEASED; EITHER RELEASED BECAUSE YOU AGREE TO

20   RELEASE THEM OR COMMITTED BECAUSE I COMMIT THEM. AND THEN

21   YOU ARE GOING TO HAVE LESS AND LESS, IS WHAT I'M TRYING TO

22   SAY. AS YOU STRIKE NAMES OFF THE LIST, YOU ARE GOING TO

23   HAVE AN EASIER TIME OF IT. IF WE COULD GET FIVE MOVED AND

24   OFF YOUR LIST, THEN YOU WOULD BE DOWN INTO THE 80S, AND

25   THEN GET ANOTHER FIVE, YOU WILL BE CLOSER TO 80.

1    **MR. RENFER:** SURE. THE COURT NEEDS TO -- I

2    WOULD JUST SUGGEST TO THE COURT, THAT OBVIOUSLY WE WILL

3    TRY TO ADHERE TO THE TRIAL SCHEDULE THAT THE COURT SETS.

4    IF WE SEE THAT WE ARE NOT ABLE TO DEVELOP OUR CASE

5    ADEQUATELY, OBVIOUSLY WE WOULD NEED TO MAKE A MOTION TO

6    CONTINUE, WHICH WE WOULD PRESENT TO THE COURT AT THE

7    APPROPRIATE TIME.

8        **THE COURT:** YEAH. I HAVE A HIGH LEVEL OF BELIEF

9    THAT DOING THEM WILL MAKE THEM SO MUCH MORE UNDERSTANDABLE

10   AND THE SOONER WE GET INTO HEARING THE CASES THE BETTER IT

11   IS. I'M REALLY READY TO GO WITH THEM.

12       **MR. RENFER:** ONE LAST THING. I DON'T MEAN TO

13   INJECT MYSELF LIKE THAT TO THE COURT, BUT IN LOOKING AT

14   THE 11 CASES, MANY OF THEM HAVE 2241'S THAT ARE STILL

15   PENDING BEFORE THIS COURT AS WELL AS MANY HAVE VARIOUS

16   MOTIONS. AGAIN, WE RECOGNIZE THAT MOTIONS TO DISMISS NEED

17   NOT LEGALLY BE DECIDED BEFORE A TRIAL OF THE CASE BUT IT

18   MIGHT PERHAPS CLARIFY SOME ISSUES IF THOSE WERE DECIDED --

19       **THE COURT:** I'M GOING TO RESOLVE THE MOTIONS

20   THAT ARE IN CASES THAT ARE IN FRONT OF ME THAT ARE

21   CONTROLLED BY EITHER *COMSTOCK* OR *TIMMS*. I'M NOT, AT THIS

22   POINT, GOING TO DISMISS MOTIONS THAT ARE BASED ON EQUAL

23   PROTECTION GROUNDS AND SELECTIVITY, BECAUSE I DIDN'T RULE

24   ON THAT YET.

25    WHAT WAS THE OTHER THING THAT YOU SAID, NOT ONLY THE

```
1   MOTION TO DISMISS BUT --

2           MR. RENFER:  IN THE 2241'S.

3           THE COURT:  OH, THE 2241'S.  I THINK TIMMS MOOTS

4   ALL OF THOSE.

5           MR. RENFER:  I THINK SO TOO, YOUR HONOR, BUT

6   THERE ARE PENDING MOTIONS.

7           THE COURT:  IF YOU HAVE A 4248 AND A 2241, YOU

8   HAVE TO DO THE 4248 FIRST.

9           MR. RENFER:  THERE ARE SIX OF YOUR CASES, I

10  BELIEVE, THAT HAVE 2241'S PENDING.

11          THE COURT:  YOU WON'T HAVE TO RESPOND TO THAT

12  PART OF THE CASE.

13          MR. RENFER:  ACTUALLY, THE MOTIONS ARE THERE AND

14  WE HAVE FILED A MOTION TO DISMISS, SO THEY ARE READY FOR

15  YOUR RULING ON THOSE.

16          THE COURT:  I THINK THEY WILL BE DISMISSED

17  WITHOUT PREJUDICE.

18          MR. RENFER:  OF COURSE, YES.  OKAY.

19          THE COURT:  ALL RIGHT.  ARE THERE LAWYERS HERE

20  IN ANY OF THE CASES THAT WANT TO BE HEARD WHO ARE IN THE

21  4248 CASES THAT REPRESENT OTHER DEFENDANTS?

22      LET'S SEE, MAYS.  WHO REPRESENTS MAYS?  YOU-ALL DO.

23          MS. LITTLE:  YOUR HONOR, WE DO.

24          THE COURT:  AND MR. ROSS REPRESENTS EDWARDS AND

25  TIMMS IS MR. TARLTON?
```

```
1              MR. TARLTON:  YES, YOUR HONOR.  I REPRESENT HIM.

2    I FILED MY NOTICE OF APPEARANCE ON JANUARY 15.  I'M

3    ARRANGING AN INTERVIEW WITH MR. TIMMS, PLANNING ON FILING

4    A MOTION FOR HEARING.

5              THE COURT:  OKAY.  THANK YOU.  HEYER?

6              MR. MCNAMARA:  I HAVE HIM, YOUR HONOR.

7              THE COURT:  JOHNSON.

8              MR. CRAVEN:  I HAVE ANTON JOHNSON, YOUR HONOR.

9              THE COURT:  HALL?  THE PUBLIC DEFENDER HAS HALL?

10             MR. ROSS:  I HAVE HALL.

11             THE COURT:  FRANCIS?

12             MR. HAWES:  I HAVE HIM, YOUR HONOR.

13             THE COURT:  WHO ARE YOU?

14             MR. HAWES:  JIM HAWES.

15             MR. CRAVEN:  HE REPRESENTS MR. FRANCIS, YOUR

16   HONOR, IN THE 4248 CASE AND I HAVE HIM IN THE COMPANION

17   HABEAS CASE.

18             THE COURT:  OKAY.  HAVE YOU FILED ANYTHING IN

19   THAT CASE, MR. HAWES?

20             MR. HAWES:  SINCE OUR LAST STATUS CONFERENCE?

21             THE COURT:  H-A-W-E-S IS YOUR NAME.

22             MR. HAWES:  CORRECT.

23             THE COURT:  WHERE DOES YOUR CASE STAND?

24             MR. HAWES:  WE MAY BE ASKING FOR A HEARING.  I

25   WANT TO MEET WITH HIM ONE MORE TIME.
```

```
 1              THE COURT:  HOW LONG HAS HE --

 2              MR. CRAVEN:  HE WAS CERTIFIED IN FEBRUARY OF --

 3    I'M SORRY, JANUARY 29 LAST YEAR, YOUR HONOR.  ALMOST A

 4    YEAR AGO.

 5              THE COURT:  SEAN FRANCIS?

 6              MR. CRAVEN:  YES, SIR.

 7              THE COURT:  AND MR. HAWES, YOU ARE HIS 4248

 8    LAWYER, RIGHT?

 9              MR. HAWES:  CORRECT.

10              THE COURT:  OKAY.

11              MR. CRAVEN:  I REPRESENT HIM IN THE HABEAS CASE.

12              THE COURT:  YEAH.

13              MR. CRAVEN:  HIS CASE IS IDENTICAL TO *BRONCHEAU*.

14              THE COURT:  YEAH.  DO YOU KNOW MUCH ABOUT HIM,

15    MR. HAWES?

16              MR. HAWES:  YES.

17              THE COURT:  HE HAS A PRIOR CONVICTION AND EIGHT

18    COUNTS OF MAKING THREATS.  WHAT WAS THAT ALL ABOUT?

19              MR. HAWES:  WHAT HE PLED TO WAS NOT SEXUAL IN

20    NATURE.  THE THREATS THEMSELVES --

21              THE COURT:  THREATS TO WHAT?

22              MR. HAWES:  THE THREATS THEMSELVES MAY HAVE BEEN

23    SEXUAL IN NATURE.  WHAT HE PLED TO WAS NOT SEXUAL IN

24    NATURE.

25              THE COURT:  WHAT WAS IT?
```

1          **MR. HAWES:**  WHAT DID HE DO?

2          **THE COURT:**  WHAT DID HE PLEAD TO?

3          **MR. HAWES:**  HE PLED TO MAKING THREATS.

4          **THE COURT:**  WHAT KIND OF THREATS?

5          **MR. HAWES:**  WHAT HE PLED TO IS JUST MAKING

6    THREATS BUT THE THREATS WERE CALLING WOMEN MILES AWAY,

7    THOUSANDS OF MILES AWAY, SAYING THAT HE WAS GOING TO DO

8    VARIOUS THINGS TO THEM BUT NEVER ACTUALLY DOING IT,

9    THOUGH.

10          **MR. CRAVEN:**  HE'S ONE OF THE ONES, YOUR HONOR,

11   THAT WE TALKED ABOUT LAST TIME WHO WAS CERTIFIED BY THE

12   SPECIALIST IN BARIATRIC SURGERY.

13          **THE COURT:**  YEAH.  HE HAD A 70-MONTH TERM.  WAS

14   THAT ON THE INTIMIDATION OF THE WITNESSES OR EXTORTION OR

15   THREATS?

16          **MR. HAWES:**  I BELIEVE THAT WAS JUST THREATS.

17          **THE COURT:**  HUH?

18          **MR. HAWES:**  I BELIEVE THAT WAS JUST ON THE

19   THREATS.

20          **THE COURT:**  DOES HE HAVE A CRIME THAT HE WAS

21   CONVICTED AND SENTENCED FOR IN FEDERAL COURT THAT WAS

22   ANTECEDENT TO HIS CERTIFICATION, THE OTHER THINGS PRIOR IN

23   TIME OR DOES HE JUST HAVE THAT ONE THING?  I'M TRYING TO

24   GET FROM YOU THAT INFORMATION.

25          **MR. HAWES:**  I BELIEVE IT'S JUST THE THREATS.  IS

1  THAT RIGHT, MR. CRAVEN?

2       **MR. CRAVEN:** YOUR HONOR, HIS ORIGINAL SENTENCE

3  WAS 70-MONTHS FOR INTIMIDATION OF WITNESSES AND ONE COUNT

4  OF EXTORTION.

5       **THE COURT:** YEAH. BUT HE HAD A PRIOR CRIME OF

6  MAKING THREATS; IS THAT RIGHT?

7       **MR. CRAVEN:** YEAH, HE DID. HE HAD ONE IN THE

8  SOUTHERN DISTRICT OF NEW YORK THE ONE IN THE EASTERN

9  DISTRICT OF KENTUCKY.

10      **THE COURT:** RIGHT.

11      **MR. CRAVEN:** WHAT HE WOULD DO IS GET DRUNK AND

12  GET ON THE PHONE AND MAKE THREATENING PHONE CALLS OF A

13  SEXUAL NATURE.

14      **THE COURT:** YEAH. AND HAVE YOU DONE ANYTHING TO

15  GET INVOLVED IN THE CASE? HE SEEMED TO HAVE ONE OF THE

16  MORE ATTENUATED SET OF FACTS, IN TERMS OF HIS

17  CERTIFICATION.

18      **MR. HAWES:** WELL, I MET WITH HIM AND THEN WE

19  FILED THE MOTION TO DISMISS.

20      **THE COURT:** ON WHAT GROUNDS?

21      **MR. HAWES:** ON *BRONCHEAU* FACTS.

22      **THE COURT:** YEAH. AND THAT WASN'T RULED ON?

23      **MR. HAWES:** CORRECT.

24      **THE COURT:** HE HAS A SUPERVISED RELEASE TERM, IN

25  OTHER WORDS?

1          **MR. HAWES:**  RIGHT.

2          **MR. CRAVEN:**  HE DOES.

3          **THE COURT:**  THE REASON FOR NOT RULING ON IT WAS

4  THAT I DIDN'T WANT TO CLUTTER UP THE CASES IN THE COURT OF

5  APPEALS WHEN IT LOOKS LIKE THEY'RE GOING TO HAVE TO BE

6  RESOLVED HERE.

7          **MR. HAWES:**  I THINK WE WILL BE REQUESTING A

8  HEARING VERY SHORTLY.

9          **THE COURT:**  YOU ARE STILL IN THIS COURT?

10         **MR. HAWES:**  RIGHT.

11         **THE COURT:**  YOU ARE NOT IN THE COURT OF APPEALS?

12         **MR. HAWES:**  CORRECT.

13         **THE COURT:**  OKAY.  WHAT'S HOLDING YOU BACK FROM

14  REQUESTING A HEARING?

15         **MR. HAWES:**  I WAS JUST GOING TO MEET WITH HIM

16  ONE MORE TIME TO MAKE SURE THAT'S WHAT HE WANTED TO DO.

17         **THE COURT:**  HIS OTHER CHOICE IS TO JUST

18  STIPULATE THAT HE'S A VALID CERTIFICATION AND GO AHEAD AND

19  DISMISS HIS CASE, HAVE AN ENTRY OF AN ORDER FINDING THAT

20  HE'S SUBJECT TO THE 4248 DETENTION.

21         **MR. HAWES:**  I UNDERSTAND THAT.

22         **THE COURT:**  IF YOU WANT TO DO THAT, THAT'S FINE.

23         **MR. CRAVEN:**  NO, WE WILL NOT BE DOING THAT.  NO.

24         **THE COURT:**  WHAT'S THAT DO, WIPE OUT YOUR 2241?

25         **MR. CRAVEN:**  I'M NOT SO MUCH CONCERNED ABOUT THE

1  2241 BY ITSELF, IN THAT SUCCESS IN EITHER CASE WILL

2  ACCOMPLISH WHAT WE WANT.

3       **THE COURT:**  YOU WILL NOT GET TO THE 2241 UNTIL

4  THE 4248 IS OVER AND FINAL ORDER IS IN.

5       **MR. CRAVEN:**  I THINK BECAUSE OF *TIMMS* YOU HAVE A

6  POINT THERE.

7       **THE COURT:**  YEAH.  RIGHT.

8       **MR. CRAVEN:**  BUT, AGAIN, YOU KNOW, SO FAR

9  *BRONCHEAU* LIVES.

10       **THE COURT:**  WELL, OKAY.

11       **MR. CRAVEN:**  BUT THEN THEY RELEASE OPINIONS

12  EVERY AFTERNOON, SO WHO KNOWS.

13       **THE COURT:**  YEAH.  BUT IF THE TWO OF YOU LOOK AT

14  IT, IF YOU ARE COLLABORATING --

15       **MR. CRAVEN:**  WE ARE.

16       **THE COURT:**  -- IT'S ONE OF THE MORE ATTENUATED

17  SET OF FACTS.  HAVE YOU GOTTEN ANY MEDICAL, PSYCHIATRIC

18  DISCOVERY ON THE CASE?

19       **MR. CRAVEN:**  YOUR HONOR, WE HAVE GOTTEN WHAT WE

20  HAVE BEEN ABLE TO GET FROM THE COURTS IN NEW YORK AND

21  KENTUCKY AND FROM PRIOR COUNSEL.  WE DO NOT YET HAVE THE

22  GOVERNMENT'S DISCOVERY.

23       **THE COURT:**  DO YOU KNOW OFF HAND WHETHER FOIA

24  APPLIES IF PRISONERS -- THEY DON'T HAVE FOIA RIGHTS?

25       **MR. CRAVEN:**  NO, THEY DO.  BUT, IN TRUTH, I

```
1   CAN'T GET THE RECORDS FROM BUTNER ANY QUICKER THAN

2   MR. RENFER CAN.  I THINK, YOU KNOW, FRANKLY, I THINK THEY

3   ARE PROBABLY SLOW TO RESPOND TO EITHER ONE OF US.

4           THE COURT:  YOU COULDN'T FILE A FREEDOM OF

5   INFORMATION ACT REQUEST TO GET YOUR MEDICAL RECORDS IF YOU

6   WERE AN INMATE?

7           MR. CRAVEN:  YES, BUT I THINK THAT WOULD SLOW

8   THE PROCESS DOWN, FRANKLY.

9           THE COURT:  OKAY.

10          MR. CRAVEN:  I'M CONFIDENT THE GOVERNMENT CAN

11  GET THIS MATERIAL QUICKER THAN WE CAN.

12          THE COURT:  OKAY.

13          MR. CRAVEN:  THAT SAID, WE'RE READY TO RECEIVE

14  IT.

15          THE COURT:  WHO'S IN THE OFARRIT-FIGUEROA CASE?

16          MR. MCNAMARA:  THAT'S ONE OF MINE, YOUR HONOR.

17          THE COURT:  WHO'S IN WOODEN?

18          MR. ROSS:  I AM.

19          THE COURT:  WHO'S IN SULLIVAN?

20          MS. PEARCE:  WE ARE, YOUR HONOR.

21          THE COURT:  OKAY, THE PUBLIC DEFENDER.  WELL,

22  I'M FINISHED WITH WHAT I HAD TO SAY.  ANYBODY ELSE WANT TO

23  ADD TO IT?  OKAY.  ALL RIGHT, THANK YOU.

24      WE'LL RESUME ON THE 11TH OF FEBRUARY.

25                      END OF TRANSCRIPT
```

```
 1                        CERTIFICATE

 2       THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF

 3  PROCEEDINGS TAKEN AT THE CIVIL SESSION OF UNITED STATES

 4  DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE

 5  PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

 6  TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

 7       THIS THE 22ND DAY OF AUGUST, 2011.

 8

 9                        /S/ DONNA J. TOMAWSKI

10                        DONNA J. TOMAWSKI
                          OFFICIAL COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```