```
              UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                   WESTERN DIVISION

                 NO.: 5:08-HC-2156-BO


UNITED STATES OF AMERICA      .
                              .
              Petitioner      .
                              .
       v.                     .
                              .  May 26, 2011
                              .  Raleigh, North Carolina
GERALD WAYNE TIMMS,           .
                              .
              RESPONDENT      .
. . . . . . . . . . . . . . . .


                    MOTION HEARING
         BEFORE THE HONORABLE TERRENCE W. BOYLE
              UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Petitioner:  EDWARD D. GRAY AND MICHAEL JAMES,
                     ASSISTANT UNITED STATES ATTORNEYS
                     UNITED STATES ATTORNEY'S OFFICE
                     310 NEW BERN AVENUE, SUITE 800
                     RALEIGH, NC 27601-1461




For the Respondent:  RAYMOND C. TARLTON, ESQUIRE
                     POST OFFICE BOX 27901
                     RALEIGH, NC 27611




Court Reporter:      STACY SCHWINN, CCR, CVR
                     P.O. BOX 1611
                     WILMINGTON, NC 28402
                     (910) 431-4502



Proceedings recorded by stenomask, transcript produced from
dictation.
```

1                     P R O C E E D I N G S           9:57 A.M.

2            THE COURT:  GOOD MORNING.  DID YOUR CLIENT COME

3 TODAY OR NOT?

4            MR. MARSHAL:  YES, SIR, HE'S HERE.

5            THE COURT:  HE'S HERE?

6            MR. MARSHAL:  YES, SIR, HE'S IN THE CELL BLOCK.

7            THE COURT:  OKAY.  YOU CAN BRING HIM IN.

8            MR. MARSHAL:  YES, SIR.

9            THE COURT:  APPARENTLY, THERE'S SOME CONFUSION

10 WITHIN THE COURT ABOUT COMING AND GOING OF THE DETAINEES AND

11 MY -- I THOUGHT I WAS TRYING TO STAY OUT OF IT, BUT MY

12 ATTITUDE IS THAT IF THEY DON'T WANT TO COME, THEY DON'T HAVE

13 TO COME, THAT'S THEIR BUSINESS.  THEY CAN MISS SOME OR ALL OF

14 IT.  AND I THINK THAT'S THE WAY YOU'D HANDLE A CIVIL CASE,

15 RIGHT?

16            IF THE MARSHALS GO TO GET HIM AND SAY WE'RE GOING TO

17 TAKE YOU.  WHERE ARE YOU GOING TO TAKE ME?  WELL, ULTIMATELY,

18 WE'LL GET YOU TO COURT, I DON'T KNOW WHERE WE'RE GOING TO TAKE

19 YOU FOR THE NEXT DAY.  AND THEY DON'T WANT TO GO, THEY CAN

20 LEAVE THEM.

21            SO, THAT'S THE WAY I WOULD HANDLE IT FROM HERE ON

22 OUT IF YOU CONTINUE TO HAVE PROBLEMS WITH THEM FOLLOWING THE

23 MARSHALS' DIRECTION.

24            DON'T YOU AGREE THAT IF IT'S A CIVIL CASE, ALL THEY

25 HAVE TO DO IS HAVE THE OPPORTUNITY AND IF THEY AFFIRMATIVELY

May 26, 2011

1 WAIVE IT, THEY DON'T HAVE TO BE HERE?

2          MR. GRAY:  ABSOLUTELY, YOUR HONOR.  WE FEEL YOUR

3 ANALYSIS IS ABSOLUTELY CORRECT.

4          THE COURT:  OKAY.  YOU'RE GOING TO GET TO ARGUE

5 FIRST ABOUT THE EQUAL PROTECTION BECAUSE IT'S YOUR CLAIM.

6          MR. TARLTON:  YES, YOUR HONOR.

7          THE COURT:  I'LL LET YOUR CLIENT GET HERE.

8          MR. TARLTON:  THANK YOU.

9          (PAUSE.)

10          (MR. TIMMS, RESPONDENT, PRESENT.)

11          THE COURT:  OKAY.

12          MR. TARLTON:  YOUR HONOR, AS WE UNDERSTAND THE ISSUE

13 BEFORE THIS COURT IT'S THE RECONCILIATION OF *BAXSTROM VS.*

14 *HEROLD*, A SUPREME COURT CASE DEALING WITH AN EQUAL PROTECTION

15 VIOLATION IN THE CONTEXT OF PRISONERS BEING SUBJECT TO CIVIL

16 COMMITMENT WITH THE HOLDING IN *UNITED STATES VERSUS CARTA*, A

17 FIRST CIRCUIT CASE.

18          THE COURT:  YEAH, BUT ALSO JUST RELAX AND THINK YOUR

19 WAY THROUGH THIS.  IT'S A PREGNANT SILENCE THAT THE SUPREME

20 COURT ARGUED AND RULED IN *COMSTOCK* AND THEY DIDN'T -- THEY

21 NEVER SAID A WORD ABOUT *BAXSTROM*.  AND I KNOW THEY SAID, WELL,

22 WE'RE RULING ON NECESSARY AND PROPER AND WE'RE RULING ON MAYBE

23 COMMERCE CLAUSE, BUT WE DON'T RULE ON SOME OTHER THINGS.

24          BUT HOW COULD A CASE LIKE *BAXSTROM* BE OUT THERE AS

25 BLACK LETTER LAW FOR 40 YEARS AND THEY BLOW RIGHT BY IT?

May 26, 2011

 1          MR. TARLTON:  YOUR HONOR, I CAN'T SPECULATE WHY THE

 2 SUPREME COURT DIDN'T TAKE UP THE DUE PROCESS AND EQUAL

 3 PROTECTION ARGUMENTS.

 4          WELL, THEY WERE ONLY -- WHAT MY UNDERSTANDING IS THE

 5 FOURTH CIRCUIT ONLY RULED ON THE -- WHETHER THERE'S AUTHORITY

 6 UNDER THE NECESSARY AND PROPER CLAUSE AND THAT WAS THE ISSUE

 7 ON APPEAL.

 8          THE COURT:  NO, THE FOURTH CIRCUIT RULED UNDER THE

 9 COMMERCE CLAUSE.  THEY WERE SAYING THAT IT EXCEEDED THIS

10 ARTICLE I SECTION 8 POWER.

11          MR. TARLTON:  CORRECT.

12          THE COURT:  YEAH.

13          MR. TARLTON:  AND THE GOVERNMENT APPEALED TO THE

14 SUPREME COURT.

15          THE COURT:  THEY DIDN'T GET ALL INTO NECESSARY AND

16 PROPER.  THEY JUST SAID IT'S OUTSIDE THE SCOPE OF THE

17 AUTHORITY GRANTED TO CONGRESS BY THE CONSTITUTION UNDER THE

18 COMMERCE CLAUSE AND, THEREFORE, IT'S UNCONSTITUTIONAL.  ALL

19 THE NECESSARY AND PROPER STUFF GOT LAYERED IN THERE IN THE

20 SUPREME COURT.

21          MR. TARLTON:  MY UNDERSTANDING IS THAT THE SUPREME

22 COURT JUST UNDER THE DOCTRINES OF CAUTION AND JUDICIAL REVIEW

23 RELUCTANCE TO ADDRESS OTHER ISSUES THAT AREN'T NEEDED AT THAT

24 TIME TO ADDRESS THAT THEY CHOSE TO SIMPLY REVERSE AND REMAND

25 ON THE NECESSARY AND PROPER CLAUSE ARGUMENT SIMPLY LEAVING FOR

May 26, 2011

Page 5

1 ANOTHER DAY -- LET THE LOWER COURTS DECIDE THE ISSUES OF

2 CONSTITUTION -- OR THE DUE PROCESS AND EQUAL PROTECTION

3 ARGUMENTS.

4         THE COURT:  YEAH.

5         MR. TARLTON:  I DON'T THINK WE CAN INFER THAT THE

6 SUPREME COURT WOULD RULE -- WOULD SAY *BAXSTROM* DOESN'T APPLY

7 IN THIS CASE FROM ITS PROCEDURAL POSTURE AT THIS POINT.

8         THAT BEING SAID, YOUR HONOR, THIS COURT'S AWARE OF

9 WHAT THE FACTS IN *BAXSTROM* --

10        THE COURT:  YEAH, NEW YORK HAS -- IS A STATE AND AS

11 A STATE IT'S A STATE OF GENERAL JURISDICTION.  AND SO IT HAS

12 REPOSED IN IT THE POLICE POWER, HEALTH, SAFETY AND WELFARE.

13 THAT IS ONE OF THE CHARACTERISTICS OF SOVEREIGNTY, DON'T YOU

14 AGREE?

15        MR. TARLTON:  YES, YOUR HONOR.

16        THE COURT:  OKAY.  AND THE NEW YORK PROBLEM IS THAT

17 THEY HAVE A STATUTE FOR PEOPLE IN CUSTODY AND A DIFFERENT

18 STATUTE FOR PEOPLE NOT IN CUSTODY.  AND SO THE COURT SAID,

19 WELL, EVEN IF YOU WANT TO DEAL WITH THIS -- I DON'T KNOW, DID

20 THEY SAY ON A RATIONAL BASIS?

21        MR. TARLTON:  YOUR HONOR, THEY DIDN'T ADDRESS WHAT

22 LEVEL OF SCRUTINY APPLIED IN *BAXSTROM*.  THEY SAID --

23        THE COURT:  WELL, BECAUSE I DON'T KNOW THAT LEVELS

24 OF -- WHEN DID LEVELS OF SCRUTINY ARISE?  I JUST THOUGHT --

25 REALIZED THIS.  THIS IS A '66 CASE, RIGHT?

May 26, 2011

1          MR. TARLTON:  THAT'S CORRECT.

2          THE COURT:  AND, YOU KNOW, IF YOU WENT BACK TO '66,

3 I'M NOT SURE THERE WAS MUCH EQUAL PROTECTION JURIS PRUDENCE

4 UNDER THE 14TH AMENDMENT THAT WOULD DEVELOP THE NUANCES

5 BETWEEN STRICT SCRUTINY AND INTERMEDIATE SCRUTINY AND RATIONAL

6 BASIS.

7          I DON'T RECALL -- IT WAS DURING THE WARREN COURT

8 THAT THAT CAME OUT, BUT I'M NOT SURE HOW DEVELOPED OR HOW

9 REFINED OR OBVIOUS THAT WAS THEN.

10          MR. TARLTON:  YOU'RE ABSOLUTELY RIGHT, YOUR HONOR.

11 I BELIEVE IT WAS *BROWN VS. THE BOARD OF EDUCATION* WAS THE

12 FIRST TIME EQUAL PROTECTION ARGUMENTS WERE REALLY USED TO --

13          THE COURT:  YEAH, BUT THAT DIDN'T SET OUT ALL OF THE

14 INTERACTION AND CLOSE GRADING BETWEEN STRICT SCRUTINY AND

15 SUSPECT CLASSES AND THINGS LIKE THAT.  I MEAN, THAT CAME LATER

16 IN THE WARREN COURT.

17          MR. TARLTON:  THAT'S CORRECT.  IT IS IMPORTANT TO

18 SEE THAT IN *BAXSTROM* -- WELL, IF THE STATUTE FAILS RATIONAL

19 BASIS REVIEW IT NECESSARILY FAILS STRICT SCRUTINY.

20          THE COURT:  YEAH.

21          MR. TARLTON:  AND *BAXSTROM* SAID THERE'S NO RATIONAL

22 CONNECTION BETWEEN THIS CLASSIFICATION, CUSTODY, AND THE

23 STATED PURPOSE, PROTECTION OF THE PUBLIC.

24          THE COURT:  YEAH.

25          MR. TARLTON:  SO, IT FAILED UNDER RATIONAL BASIS

May 26, 2011

 1 REVIEW OR WHAT WOULD BE CALLED TODAY RATIONAL BASIS REVIEW.

 2        THE COURT:  YEAH.

 3        MR. TARLTON:  SO, THEY DIDN'T HAVE A NEED TO GOVERN

 4 THESE DEFERRING LEVELS OF SCRUTINY IN *BAXSTROM*.

 5        BUT *CARTA* IS OBVIOUSLY FOCUSED ON THIS IDEA THAT --

 6 OR THE CONCEPT OF THE GENERAL POLICE POWER THAT WHILE REPOSED

 7 IN THE STATES LIKE NEW YORK THEY HAVE A POLICE POWER SO THEY

 8 CAN REACH INDIVIDUALS IN CUSTODY AND INDIVIDUALS OUTSIDE OF

 9 CUSTODY.

10        THE FIRST CIRCUIT HAS ARGUED THAT FEDERAL

11 JURISDICTION IS ERRATICALLY DIFFERENT, THAT THE FEDERAL

12 GOVERNMENT CAN ONLY REACH INDIVIDUALS IN B.O.P. CUSTODY --

13        THE COURT:  BECAUSE IT DOESN'T HAVE A GENERALIZED

14 POLICE POWER.  THE UNITED STATES AS A SOVEREIGN HAS ONLY THOSE

15 POWERS GIVEN TO IT BY THE CONSTITUTION.  AND THE OVERRIDING --

16 I DON'T THINK THERE'S AN OVERRIDING NATIONAL POLICE POWER, IS

17 THERE?

18        MR. TARLTON:  THERE'S NOT, YOUR HONOR.  BUT TO SAY

19 THAT CONGRESS CANNOT REACH INDIVIDUALS OUTSIDE OF B.O.P.

20 CUSTODY IN A MANNER THAT RESEMBLES THE EXERCISE OF A POLICE

21 POWER IS INTELLECTUALLY DISHONEST.  CONGRESS DOES THAT ALL THE

22 TIME.  IT'S NOT A GENERAL POLICE POWER ASSERTED OVER THE

23 AMERICAN PUBLIC.  RATHER, IT'S A POLICE POWER THEY CAN ASSERT

24 WITHIN FEDERAL -- OR UNITED STATES TERRITORIES, MARITIME

25 JURISDICTION.

May 26, 2011

 1          THE BIGGEST EXAMPLE WE CAN THINK OF, YOUR HONOR, IS
 2 ARTICLE I, SECTION 8 OF THE CONSTITUTION CONFERS ON CONGRESS
 3 THE EXCLUSIVE POLICE POWER OVER WASHINGTON, D.C.
 4          THE COURT:  YEAH.  SO, YOU'RE BASICALLY GRABBING THE
 5 -- THE D.C. CODE OFFENDERS MIGHT HAVE A BETTER CASE THAN YOUR
 6 CLIENT HAS AND YOU'RE BACKING INTO THAT SORT SAYING THAT SINCE
 7 THE UNITED STATES CAN EXERCISE POLICE POWER OVER SOME PLACES,
 8 IT MEANS THAT IT HAS AT LEAST SOME DISPARITY BETWEEN HOW IT
 9 TREATS PEOPLE IN THOSE PLACES WHO ARE CIVILIANS AND HOW IT
10 TREATS DETAINEES IN THE PRISON.
11          MR. TARLTON:  THAT'S CORRECT, YOUR HONOR.  THERE'S
12 NO --
13          THE COURT:  AND IF THERE'S A DISPARITY ANYWHERE,
14 THERE'S A DISPARITY EVERYWHERE.
15          MR. TARLTON:  CORRECT.
16          THE COURT:  YEAH.  YOU WIN IF THEY TREAT SOME PLACE
17 LIKE TERRITORIES OR FEDERAL ENCLAVES, THINGS OF THAT SORT.
18          MR. TARLTON:  RIGHT.  ALSO ARTICLE IV OF THE
19 CONSTITUTION GIVES -- CONFERS ON CONGRESS THE POLICE POWER
20 OVER THE FLORIDA TERRITORIES; PUERTO RICO, GUAM, THE
21 PHILIPPINES.
22          THERE IS A POLICE POWER IN MILITARY BASES.  IN FACT,
23 OUR RESEARCH LAST NIGHT WAS SHOWING THAT MILITARY BASES ARE
24 NOW BUILDING PUBLIC SCHOOLS.  YOU HAVE THESE ALMOST CIVILIAN
25 TYPE TOWNS OR CITIES OCCURRING WITHIN OPEN LARGE MILITARY

May 26, 2011

1 BASES.  THAT'S CERTAINLY THE EXERCISING OF A POWER THAT

2 RESEMBLES A GENERAL POLICE POWER.

3            THE MERE STATUS OF CUSTODY IS NOT -- HAS NO LOGICAL

4 NEXUS TO PROTECTING THE PUBLIC FROM SEXUAL PREDATION.  THERE

5 CERTAINLY COULD BE INDIVIDUALS WITH THE SAME SORT OF

6 PROPENSITIES AS IN B.O.P. CUSTODY THAT ARE IN THESE -- WITHIN

7 THE TERRITORIAL JURISDICTION OF THE UNITED STATES.  THERE'S NO

8 4248 ANALOG THAT'S REACHING THOSE INDIVIDUALS.

9            THAT'S THE DISPARATE TREATMENT BETWEEN SIMILARLY

10 SITUATED GROUPS THAT VIOLATES EQUAL PROTECTION IN THIS CASE.

11            THE COURT:  OKAY.  THANK YOU.

12            MR. TARLTON:  THANK YOU, YOUR HONOR.

13            THE COURT:  MR. JAMES OR MR. GRAY.

14            MR. GRAY:  GOOD MORNING, YOUR HONOR.

15            THE COURT:  GOOD MORNING.

16            MR. GRAY:  YOUR HONOR, IT WOULD BE THE POSITION OF

17 THE GOVERNMENT THAT IN THIS CASE THE EQUAL PROTECTION ANALYSIS

18 SIMPLY WOULDN'T APPLY.

19            AS WE START TO WALK THROUGH WHAT TOOK PLACE IN

20 *BAXSTROM*, AS THE COURT NOTED EARLIER, ESSENTIALLY THE STATE OF

21 NEW YORK HAD A STATUTE THAT APPLIED TO TWO DIFFERENT CLASSES.

22 AND THAT'S WHERE YOU START WITH YOUR EQUAL PROTECTION

23 ANALYSIS.  YOU START WITH TWO CLASSES.

24            THEN THE NEXT STEP IS TO DETERMINE WHETHER OR NOT

25 THERE'S A STATUTE THAT COVERS THE TWO STATUTES AND THEN IT'S A

May 26, 2011

1 QUESTION OF WHETHER OR NOT THE STATUTE TREATS EACH OF THE TWO

2 CLASSES DIFFERENTLY.

3          AND THEN IF THAT TAKES PLACE, IT'S A QUESTION OF

4 WHETHER OR NOT THERE'S A RATIONAL BASIS FOR THAT ANALYSIS.

5          AS THE COURT APTLY POINTED OUT EARLIER THAT BECAUSE

6 OF WHEN *BAXSTROM* TOOK PLACE IN 1966, THERE MAY NOT HAVE BEEN

7 ENOUGH OF A --

8          THE COURT:  YEAH, I'M TRYING -- I'M A LOT OLDER THAN

9 YOU.  I'M TRYING TO LOOK BACK HISTORICALLY.  THERE WERE -- YOU

10 KNOW, TITLE VII AND THE VOTING RIGHTS ACTS WERE GREAT SOCIETY

11 PROGRAMS THAT HAPPENED IN '64 AND/OR '65.  SO, WE KNOW THAT

12 THE SUPREME COURT WASN'T, YOU KNOW, RACING UP IN '66 TO BE

13 DECIDING THOSE KINDS OF THINGS.

14          SO, WHERE WAS THE LAW OF EQUAL PROTECTION?  IT WAS

15 SOMEWHERE BETWEEN *BROWN*, WHICH WAS A BREAKTHROUGH, AND THE

16 NEXT 11 OR 12 YEARS.  AND THERE WASN'T A LOT OF JURIS PRUDENCE

17 IN THAT.  MOST OF THIS JURIS PRUDENCE CAME FROM '66 FORWARD

18 FOR THE BALANCE OF THE WARREN COURT AND INTO THE EARLY BURGER

19 COURT.

20          MR. GRAY:  YOU'RE ABSOLUTELY RIGHT, YOUR HONOR.

21 HOWEVER, THERE WAS ENOUGH OF AN INTELLECTUAL FRAMEWORK THAT

22 WAS CREATED THAT BASICALLY WAS WHAT THE WARREN COURT ADOPTED.

23          THE COURT:  WELL, WHO CAME UP WITH THE FIRST IDEA OF

24 CLASSIFICATIONS AND STRICT SCRUTINY AND SUSPECT CLASSES?

25          MR. GRAY:  WELL, IF WE TAKE A LOOK AT *OYLER VS.*

May 26, 2011

1 *BOLES*, WHICH TOOK PLACE IN 1962, AND I CAN GIVE YOU THE COURT

2 CITE FOR THAT.

3          THE COURT:  OKAY.  SO, YOU'RE SAYING THERE'S A '62

4 CASE --

5          MR. GRAY:  YES.

6          THE COURT:  -- THAT BEGAN TO PUT FLESH ON THE BONES?

7          MR. GRAY:  YES, SIR.  THAT'S WHERE WE START TO SEE

8 THIS -- THE FIRST ANALYSIS WHERE WE START TO SEE THIS -- THE

9 ANALYSIS AS TO WHAT THE FEDERAL GOVERNMENT --

10          THE COURT:  AND WHAT KIND OF A CASE, WHAT WAS THE

11 BASIS?  AND *BAKER VS. CARR* I THINK HAS PROBABLY GOT AN EQUAL

12 PROTECTION ANALYSIS, DOESN'T IT?  AND *BAKER* IS A '61 CASE, I

13 THINK.

14          MR. GRAY:  YES, YOUR HONOR, EXACTLY.  AND *BAKER VS.*

15 *CARR* IS ONE OF THE FIRST AREAS WHERE THEY ACTUALLY STARTED TO

16 DIG INTO THAT MEATY AREA.  BUT *OYLER* IS WHEN THEY STARTED TO

17 ESSENTIALLY KIND OF FLESH THAT OUT.

18          THE COURT:  WELL, WHAT WAS *OYLER* -- WHAT WAS THE

19 COMPLAINT IN *OYLER*?  WHAT WAS THE GRIEVANCE?

20          MR. GRAY:  THE GRIEVANCE IN THAT CASE, AND BEAR WITH

21 ME, YOUR HONOR, BECAUSE I DIDN'T PROPERLY BRIEF ON THAT CASE,

22 I'M JUST FAMILIAR WITH IT BASED ON ITS APPLICATION.

23          HOWEVER, THAT WAS A CASE WHERE WE HAVE TWO -- WE'VE

24 GOT THE FEDERAL GOVERNMENT SELECTIVELY APPLYING -- BEAR WITH

25 ME, YOUR HONOR.

Case 5:08-hc-02156-BO   Document 100   Filed 08/29/11   Page 11 of 19

 1           THE COURT:  I MEAN, I WAS IN LAW SCHOOL IN THE LATE

 2 '60S AND WHEN YOU DID CON LAW THEN, THE BOOK WAS ABOUT AN

 3 EIGHTH OF AN INCH THICK ON EQUAL PROTECTION AND THINGS LIKE

 4 THAT AND IT WAS ALL ANTECEDENT STUFF.  AND NOW THE FIRST

 5 AMENDMENT AND EQUAL PROTECTION ARE 98 PERCENT OF THE BOOK.

 6           MR. GRAY:  YES, YOUR HONOR.  AND I APOLOGIZE, YOUR

 7 HONOR, I'M NOT GOING TO BE ABLE TO GIVE YOU THE FULL FACTS --

 8           THE COURT:  YEAH.  THAT'S OKAY.

 9           MR. GRAY:  -- OF *OYLER* ONLY BECAUSE I WASN'T ABLE TO

10 PREPARE FOR THAT.

11           THE COURT:  BUT THIS WAS A RAPIDLY DEVELOPING JURIS

12 PRUDENCE, LANDSCAPE OF JURIS PRUDENCE.  AND SO THE SUPREME

13 COURT IN '66 IN *BAXSTROM*, THEY'RE PROBABLY NOT UNDERSTANDING

14 WHEN THEY SAY THIS VIOLATES RATIONAL BASIS, THEY'RE PROBABLY

15 NOT UNDERSTANDING WHAT THE LAW'S GOING TO BE IN THE 21ST

16 CENTURY.

17           MR. GRAY:  I WOULD AGREE WITH THAT, YOUR HONOR, BUT

18 I WOULD ALSO SAY THAT IN *BAXSTROM* --

19           THE COURT:  EVEN THOUGH THEY USED WORDS OF ART WHICH

20 HAS BECOME WORDS OF ART, I DOUBT SERIOUSLY IF THOSE WERE WORDS

21 OF ART IN 1966.

22           MR. GRAY:  I WOULD COMPLETELY AGREE, YOUR HONOR.

23 HOWEVER, I DON'T BELIEVE WE NEED TO EVEN GET TO THE RATIONAL

24 BASIS ANALYSIS AS THE *BAXSTROM* COURT DIDN'T REALLY HAVE TO

25 BECAUSE AS IT WAS LOOKING AT THE CASE, WHEN WE LOOK AT THE

May 26, 2011

1 STATUTE IN *BAXSTROM*, WE HAVE TWO DISTINCT CLASSES.

2          THE COURT:  YEAH.

3          MR. GRAY:  WE HAVE A STATUTE THAT COVERS PRISONERS

4 AND THEN THAT COVERS EVERYBODY ELSE, WE'LL JUST CALL THOSE

5 PEOPLE CIVILIANS.

6          THE COURT:  YEAH, BUT HIS REFERENCE TO D.C. CODE AND

7 TERRITORIES AND I DON'T KNOW WHAT AMERICAN SAMOA -- I DON'T

8 EVEN KNOW IF CONGRESS LEGISLATES ABOUT AMERICA SAMOA AND WHAT

9 OTHER TERRITORIES DO WE PURELY HAVE -- PUERTO RICO IS A

10 COMMONWEALTH.  AND THE VIRGIN ISLANDS, ARE THEY --

11          MR. GRAY:  THE VIRGIN ISLANDS ARE A TERRITORY.

12          THE COURT:  A TERRITORY, OKAY.  I DON'T KNOW HOW

13 FINE TUNED AND HANDS-ON CONGRESS IS ABOUT THOSE PLACES.  BUT

14 OBVIOUSLY IN THE DISTRICT OF COLUMBIA, IT DOES LEGISLATE AND

15 EXERCISE THE POLICE POWER.  AND APPARENTLY IT DID IT IN THE

16 DISTRICT OF COLUMBIA BECAUSE YOU HAVE THE SEXUAL PSYCHOPATH

17 LAW.

18          MR. GRAY:  YES, YOUR HONOR.  BUT AS WE'VE ARGUED

19 BEFORE THE COURT PREVIOUSLY, THE SEXUAL PSYCHOPATH LAW FOR THE

20 DISTRICT OF COLUMBIA WOULDN'T APPLY TO THOSE WHO FIT UNDER THE

21 STATUTE FOR 4248.  WE'RE TALKING TWO COMPLETELY DISTINCT

22 CLASSIFICATIONS IN TERMS OF STATUTE, NOT AN EQUAL PROTECTION

23 ISSUE IN TERMS OF HOW WE'RE TREATING TWO DIFFERENT CLASSES.

24          AND IN THIS CASE WITH 4248, WE'RE NOT TALKING ABOUT

25 COVERING CIVILIANS AND PRISONERS, WE'RE TALKING ABOUT ONE

May 26, 2011

1 CLASS; THOSE WHO ARE WITHIN THE CUSTODY OF B.O.P. AND I WOULD

2 SUBMIT THAT IN THIS CASE WE'RE TALKING ABOUT A VERY FINITE

3 CONGRESSIONAL STRICTURE TO APPLY.

4           THE COURT: SO, WORSE CASE SCENARIO FROM YOUR

5 STANDPOINT, WHAT CONGRESS DID IN 4248 IS ALWAYS RATIONAL

6 BECAUSE IT'S A SMALL SUBSET OF PEOPLE THAT IT HAS CONTROL

7 OVER.

8           MR. GRAY: WELL, YOUR HONOR, I WOULD SAY IT WOULDN'T

9 GET TO THE RATIONAL BASIS ANALYSIS BECAUSE WE DON'T HAVE A

10 DISTINCT CLASS THAT'S BEING TREATED DIFFERENTLY, WE'RE DEALING

11 WITH ONLY ONE CLASS. AND THE FIRST STEP IN THE EQUAL

12 PROTECTION ANALYSIS IS TWO CLASSES. WE DON'T HAVE THAT HERE.

13 WE'RE DEALING WITH ONE CLASS, PRISONERS AND THOSE WITHIN THE

14 CUSTODY --

15           THE COURT: BUT IN *BAXSTROM* THEY HAD PEOPLE IN

16 PRISON AND PEOPLE NOT IN PRISON AND THAT'S THE SAME SITUATION

17 BY PARALLEL TO WHAT YOU HAVE IN D.C.; YOU HAVE PEOPLE IN

18 PRISON AND PEOPLE NOT IN PRISON.

19           MR. GRAY: WELL, NOT NECESSARILY, YOUR HONOR. IN

20 THE STATUTE IN NEW YORK THE STATUTE SAID THAT ALL PERSONS

21 CIVILLY COMMITTED HOWEVER OTHER THAN THOSE WHO ARE AT THE --

22 WHO ARE WITHIN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS

23 FOR THE STATE OF NEW YORK. SO, WITHIN THAT STATUTE THEY'VE

24 INCLUDED CIVILIANS WITHIN THAT.

25           SO, THEY'VE SAID ALL PERSONS AND THOSE WHO ARE

May 26, 2011

1 WITHIN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS.  OF

2 COURSE, 4248 DOESN'T START WITH THE ALL PERSONS, IT STARTS

3 WITH JUST THOSE WITHIN THE CUSTODY OF THE B.O.P.

4             THE COURT:  NO, BUT THE D.C. SEXUAL PSYCHOPATH DOES

5 START WITH ALL PERSONS.

6             MR. GRAY:  BUT IT'S A DIFFERENT CLASS IN TERMS OF

7 HOW IT DEALS WITH THOSE.  IN THAT CASE WE'RE DEALING WITH ALL

8 PERSONS WHO FIT UNDER A DIFFERENT SORT OF A MENTAL CAPACITY.

9 THOSE PERSONS WOULDN'T -- THOSE PERSONS WITHIN 4248 WOULDN'T

10 FIT UNDER THE D.C. SEXUAL PSYCHOPATH STATUTE AS WE'VE ARGUED

11 BEFORE THE COURT PREVIOUSLY.

12             SO, EVEN IF YOU WERE IN 4248, YOU WOULDN'T FALL

13 UNDER THE D.C. SEXUAL PSYCHOPATH STATUTE.  IT'S SIMPLY IN

14 OPPOSITE.  IT'S A SIMPLY DISTINCT STATUTE AND IT'S A SIMPLY

15 DISTINCT APPLICATION OF THAT STATUTE.

16             SO, WHAT WE KIND OF SEE HERE IS JUGGLING WITH TWO

17 DIFFERENT CONCEPTS.  WE'VE GOT THE EQUAL PROTECTION ARGUMENT,

18 WHICH I WOULD ARGUE THAT THE RESPONDENT HASN'T CLEARLY

19 ARTICULATED WHERE THE TWO GROUPS ARE THAT ARE BEING TREATED

20 DISPARATELY SO THAT WE COULD AT LEAST MAKE THE ARGUMENT AS TO

21 WHETHER OR NOT THAT DISPARATE TREATMENT WOULD ENGENDER OR

22 REQUIRE A RATIONAL BASIS ANALYSIS AT THAT TIME.  WE SIMPLY

23 DON'T GET TO RATIONAL BASIS BECAUSE WE DON'T HAVE THE TWO

24 GROUPS.

25             BUT THEN IF WE TAKE A LOOK AT THE D.C. SEXUAL

1 PSYCHOPATH STATUTES, WHAT WE'RE LOOKING AT HERE IS A STATUTE

2 THAT WOULD APPLY TO AN ENTIRELY DIFFERENT GROUP, BUT WOULDN'T

3 APPLY TO THOSE WHO FALL UNDER 4248.

4         SO, WE'RE DEALING WITH -- IN THAT CONTEXT, IT

5 WOULDN'T NECESSARILY BE AN EQUAL PROTECTION ARGUMENT, BUT MORE

6 ALONG THE LINES OF WHETHER OR NOT THE STATUTE IS OVER BROAD IN

7 TERMS OF ITS APPLICATION OF 4248 IF IT'S BEING APPLIED IN THAT

8 WAY.

9         BUT IN THE D.C. SEXUAL PSYCHOPATH STATUTE WE'RE

10 TALKING ABOUT AN APPLICATION OF THE D.C. CIVILIAN STATUTE THAT

11 WOULDN'T APPLY TO THOSE WHO ARE UNDER B.O.P. CUSTODY.

12         THE COURT:  WHY DOESN'T IT APPLY TO PEOPLE UNDER

13 B.O.P. CUSTODY?

14         MR. GRAY:  YOUR HONOR, BECAUSE I'VE ONLY -- I WAS

15 ESSENTIALLY JUST KIND OF HELPING BACK BRIEF ON THAT, I CAN GET

16 INTO THE DETAILS ON THAT IF I WERE TO -- IF WE COULD PROVIDE

17 BRIEFING ON THAT, YOUR HONOR.

18         THE COURT:  UH-HUH.

19         MR. GRAY:  BUT OUR READING OF THE STATUTE WAS THAT

20 THE MENTAL ILLNESS REQUIREMENT UNDER THE D.C. SEXUAL

21 PSYCHOPATH STATUTE REQUIRED A DIFFERENT LEVEL OF MENTAL

22 ILLNESS THAN REQUIRED UNDER THE --

23         THE COURT:  4248.

24         MR. GRAY:  -- 4248.  THERE WAS A SPECIFIC DEFINITION

25 AS TO THE TYPE OF MENTAL ILLNESS THAT WAS REQUIRED UNDER THE

May 26, 2011

1 D.C. SEXUAL PSYCHOPATH STATUTE.

2      THE COURT:  AND THAT WAS AN ADEQUATE DISTINCTION SO

3 THAT THEY WOULDN'T BE REACHING THE SAME GROUPS.

4      MR. GRAY:  THAT WAS OUR ANALYSIS AND THAT'S WHAT WE

5 PUT FORTH IN OUR BRIEFING AND IN THOSE CASES SUCH AS *WOODARD*

6 AND THE OTHER D.C. CIVIL DETAINEES.

7      THE COURT:  OKAY.

8      MR. GRAY:  ADDITIONALLY, YOUR HONOR, JUST TO FOLLOW

9 UP ON A COUPLE OF THE OTHER DISTINCTIONS IN *BAXSTROM*, WHEREAS,

10 *BAXSTROM* WAS DEALING WITH TWO COMPLETELY DIFFERENT CLASSES

11 THAT WERE DEFINED BY ONE STATUTE.

12      WHEN WE TAKE A LOOK AT 4248, WE'RE TALKING ABOUT A

13 VERY NARROWLY CONSTRUED STATUTE.  WE'RE TALKING ABOUT THOSE

14 WITHIN A SPECIFIC POWER OF CONGRESS, THOSE WITHIN THE CUSTODY

15 OF B.O.P.  4248 DOESN'T EXTEND APPLICABILITY TO THOSE WHO ARE

16 IN THE CIVILIAN POPULATION.  IF IT DID, IT WOULD LOOK A LOT

17 MORE LIKE *BAXSTROM*.  BUT BECAUSE WE'RE DEALING WITH A DISTINCT

18 GROUP --

19      THE COURT:  WELL, THAT'S PRETTY MUCH WHAT *CARTA*

20 SAID, WASN'T IT?

21      MR. GRAY:  AND THAT IS EXACTLY THE ANALYSIS OF

22 *CARTA*.

23      THE COURT:  YEAH.

24      MR. GRAY:  AND THE ANALYSIS OF *CARTA* HAS BEEN

25 ADOPTED BY THIS COURT IN *HEYER* AS WELL AS IN *FIGEROA* AND A

May 26, 2011

1 NUMBER OF OTHER CASES AS WELL AS ONE OTHER DISTRICT COURT --

2 ANOTHER JUDGE WITHIN THIS DISTRICT.

3 SO, IT APPEARS THAT THE FAILING OF THE RESPONDENT

4 STOPS AT THE FIRST PRONG OF THE EQUAL PROTECTION ANALYSIS,

5 WHICH IS DEFINING TWO DISTINCT CLASSES WITHIN 4248, AND THAT

6 SIMPLY CANNOT BE DONE.

7 THE COURT:  GREAT.  THANK YOU.  MR. TARLTON.

8 MR. TARLTON:  YOUR HONOR, I'D LIKE TO MAKE ONE BRIEF

9 POINT IN RESPONSE TO THE GOVERNMENT'S ARGUMENT.  THE STATE IN

10 *BAXSTROM VS. HEROLD* RAISED THAT SAME ARGUMENT MR. GRAY RAISED

11 ON PAGE 111, THE DIRECTOR CONTENDS THAT THE STATE HAS CREATED

12 A REASONABLE CLASSIFICATION DIFFERENTIATING THE CIVILLY INSANE

13 FROM THE CRIMINALLY INSANE.

14 THEY MADE THAT ARGUMENT THAT IN *BAXSTROM* THE

15 PRISONERS -- THAT THERE WAS A DIFFERENT MENTAL ILLNESS ELEMENT

16 THAN FOR NON-PRISONERS AND THAT CREATES -- THAT YOU DON'T HAVE

17 TWO -- THEY'RE JUST -- THEY'RE NOT SIMILARLY SITUATED ON THAT

18 GROUNDS.  AND THE COURT REJECTED THEIR ARGUMENT.  IT'S

19 FUNDAMENTALLY THE SAME GROUP OF PEOPLE, PEOPLE WITH

20 DISPOSITIONS THAT RENDER THEM DANGEROUS TO THE PUBLIC.  THAT'S

21 THE CLASS.  PARSING IT DOWN TO NUANCES IN PSYCHOLOGY IS NOT

22 THE PROPER WAY TO SAY YOU DON'T HAVE SIMILARLY SITUATED

23 CLASSES, YOUR HONOR.  THANK YOU.

24 THE COURT:  THANK YOU.  I'M GOING TO MAKE A RULING

25 IN THIS AS A PART OF THE FINAL JUDGMENT I GUESS IN *TIMMS* WHEN

May 26, 2011

1 THE CASE IS OVER.  SO, THIS WILL ALLOW ME TO DO THAT.

2          WE'LL TAKE A RECESS AND COME BACK WITH THE CRIMINAL

3 MATTERS IN ABOUT TEN MINUTES.

4          MR. TARLTON:  THANK YOU, YOUR HONOR.

5          MR. GRAY:  THANK YOU, YOUR HONOR.

6          THE COURT:  THANK YOU.

7      (WHEREUPON, THESE PROCEEDINGS RECESSED AT 10:20 A.M., TO

8 RECONVENE ON MAY 27, 2011.)

          I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE
TRANSCRIPT OF SAID PROCEEDINGS.


/s/ STACY SCHWINN                               8/29/11
STACY SCHWINN, CCR, CVR                          DATE