IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-HC-2156-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| GERALD WAYNE TIMMS | ) | |

Petitioner, the United States of America ("the government") instituted this civil action seeking to commit Gerald Wayne Timms as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act") [DE 1]. 18 U.S.C. § 4248. The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Mr. Timms and issued a preliminary determination that he is sexually dangerous within the meaning of the Act. A certificate filed under the Act stays a respondent's release from federal custody pending a hearing to determine whether he qualifies for commitment as a sexually dangerous person. The government's petition was filed less than one month prior to Mr. Timms' scheduled date of release from BOP custody on November 11, 2008.

## BACKGROUND

An evidentiary hearing was held before this Court on May 25 - 27, 2011, pursuant to 18 U.S.C. § 4247(d) [DE 77, 78]. On July 1, 2011, an order finding that the Adam Walsh Act was unconstitutional as applied and granting Mr. Timms' motion to dismiss was entered. The government appealed, and by opinion filed January 9, 2012, the court of appeals reversed this Court's ruling on the motion to dismiss and remanded for consideration of whether Mr. Timms satisfies the criteria for commitment as a sexually dangerous person. Mr. Timms filed a petition for certiorari in the Supreme Court, and such petition was denied by order entered October 1,

2012.

At the Court's request, the parties submitted proposed findings of fact and conclusions of law on June 15 and August 10, 2012. After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure:

The Court adopts and incorporates as fully set forth herein sections I and II of the government's proposed findings of fact and conclusions of law [DE 128]. The Court concludes that the government has met its burden to demonstrate by clear and convincing evidence that Mr. Timms suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty refraining from sexually violent conduct or child molestation if released. Therefore, Mr. Timms is committed to the custody of the Attorney General pursuant to 18 U.S.C. §4248.

## DISCUSSION

To obtain a commitment order against Mr. Timms, the government is required to establish three distinct facts by clear and convincing evidence: that Mr. Timms (1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) "currently suffers from a serious mental illness, abnormality, or disorder"; and (3) as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(6). *See United States v. Comstock*, 627 F.3d 513, 515-16 (4th Cir. 2010). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established,

2

and, as well, as evidence that proves the facts at issue to be highly probable." *United States v. Hall*, 664 F.3d 456, 461 (4th Cir. 2012) (citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418, 423-24 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and proof "beyond a reasonable doubt").

### 1. *Whether respondent has engaged in or attempted to engage in sexually violent conduct or child molestation.*

The Court finds that the government has proven by clear and convincing evidence that Mr. Timms has engaged in sexually violent conduct or child molestation in the past. Mr. Timms has conceded that this element is satisfied [DE 133 at 9].

### 2. *Whether respondent currently suffers from a serious mental illness, abnormality, or disorder.*

Three experts testified in this matter; Drs. Arnold and Demby were called by the government and Dr. Warren was called by Mr. Timms. Dr. Arnold opined that Mr. Timms suffers from antisocial personality disorder and that in this instance this diagnosis rises to the level of a serious mental disorder. Dr. Arnold also testified regarding Mr. Timms' sexual interest in pubescent children and his sexual arousal to the suffering of others and forcing of others into sexual contact, although Dr. Arnold opined Mr. Timms' sexual offense history is better explained by his antisocial personality disorder than by a paraphilia or pedophilia diagnosis. Dr. Arnold noted that Mr. Timms is sexually indiscriminate and sexually exploitive.

Dr. Demby opined that Mr. Timms suffers from paraphilia, not otherwise specified; pedophilia, sexually attracted to females, nonexclusive type; cannabis abuse; alcohol abuse; and

3

antisocial personality disorder. Dr. Demby notes that these diagnoses are "chronic, pervasive, and deeply ingrained" [Pet'r Ex. 5 at 31]. Dr. Warren opined that Mr. Timms suffers from pedophilia, sexually attracted to females, nonexclusive type; alcohol abuse, in remission in a controlled environment; cannabis abuse, in remission in a controlled environment; and antisocial personality disorder. Dr. Warren noted that while he is not suffering from what the mental health community might deem a major mental disorder, Mr. Timms' diagnoses may satisfy the threshold for serious mental disorders as that term is defined by the Adam Walsh Act.

The Court finds that the government has satisfied its burden to show that Mr. Timms suffers from a serious mental disorder. Two experts, including Mr. Timms' expert, have diagnosed Mr. Timms as having pedophilia. The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR") requires that the following criteria be met to support a diagnosis of pedophilia: (1) over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children; (2) the person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and (3) the person is at least age 16 years and at least 5 years older than the child or children. DSM-IV-TR at 572.

Though Dr. Arnold noted that Mr. Timms appears to be more interested in pubescent aged children than prepubescent children, the Court credits the opinions of Drs. Demby and Warren as to the applicability of a pedophilia diagnosis. Mr. Timms has been convicted of child molestation and receiving child pornography and has written letters requesting pornographic images of girls under the age of thirteen for personal use. Accordingly, the Court is persuaded by

4

the experts in this matter who opined that a diagnosis of pedophilia, non-exclusive type is appropriate.

The Court is also informed by both Dr. Demby and Dr. Arnold's consideration of the diagnosis of sexual sadism. Sexual sadism is a paraphilia characterized by "sexual excitement and arousal derived from the real psychological or physical suffering of a victim." Pet'r Ex. 5 at 24. Dr. Demby noted that the characteristics of Mr. Timms' sexual assaults on two adult women "strongly suggest the presence of Sexual Sadism in Mr. Timms' profile." Pet'r Ex. 5 at 25; *see also* Pet'r Ex. 8 at 5. Dr. Demby opined, however, that Mr. Timms does not meet all of the criteria for a sexual sadism diagnosis because of the very short time period within which he abducted and raped two women, murdering one. Mr. Timms was incarcerated a not long after these incidents. Dr. Arnold testified that Mr. Timms' antisocial personality disorder acted as a "fog" that impeded his ability to formulate a clear understanding of the other diagnoses present, including sexual sadism. Although none of the experts applied a sexual sadism diagnosis, the Court credits Drs. Arnold and Demby's consideration as important the presence of force or violence in Mr. Timms' sexual offending history.[1]

The Court further finds that the government has satisfied its burden to show that, at a minimum, Mr. Timms' diagnosis of pedophilia evidences a serious mental disorder in this instance. Though this point was contested at the hearing, in his proposed findings of fact and conclusions of law Mr. Timms appears to have conceded it [DE 133 at 9]. Irrespective of Mr. Timms' apparent concession, however, the Court finds that the government has satisfied its

---

[1] Insofar as it is addressed in Dr. Demby's report, the Court does not express an opinion as to her discussion of the paraphilia NOS diagnosis as it relates to Mr. Timms' attraction to pubescent girls or non-consenting partners.

5

burden with respect to this step of the inquiry. Drs. Arnold and Demby both opined that Mr. Timms suffers from a serious mental disorder, and while Dr. Warren appeared hesitant to draw what he thought to be legal conclusion, his testimony coupled with that of the other experts sufficiently persuades the Court that Mr. Timms' diagnosed mental disorder of pedophilia satisfies the serious mental disorder requirement of the Adam Walsh Act. Accordingly, the Court finds that the government has met its burden by clear and convincing evidence to show that Mr. Timms currently suffers from pedophilia and that this diagnosis alone is sufficient to satisfy the serious mental disorder requirement of the Act.[2]

### 3. Whether, as a result of the illness, abnormality, or disorder, the respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The government has also met its burden to establish, by clear and convincing evidence, that Mr. Timms will have serious difficulty in refraining from sexually violent conduct if released. As noted by the Fourth Circuit in *United States v. Hall*,

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety...provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil

---

[2]Although all three experts diagnosed Mr. Timms with antisocial personality disorder, and Drs. Demby and Warren also diagnosed Mr. Timms with alcohol and cannabis abuse, given that Mr. Timms's pedophilia is sufficient to satisfy the government's burden on the second element for commitment, the Court does not express an opinion on whether the diagnostic criteria for these conditions are met in Mr. Timms's case or on whether these diagnoses could ever constitute serious mental disorders under the Act.

6

commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

664 F.3d at 463.

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments. While it is important to note that these actuarial risk assessments reflect relative risk among various large groups of individuals and do not provide specific risks or probabilities for any individual, the Court has considered Mr. Timms' scores and the testimony of the experts regarding both their use of the instruments and their consideration of other factors.

At the time of his evaluations, Mr. Timms had been incarcerated for roughly twenty-three years; indeed, Dr. Warren testified that since Mr. Timms was seventeen or eighteen years old he has only been out in the community for approximately eleven months, and that he did not "do well" during that time. Mr. Timms' history includes murder, multiple instances of rape and sexual assault, child molestation, and receipt of child pornography. Although Mr. Timms' past conduct alone cannot serve as a basis upon which to civilly commit him under the Adam Walsh Act, the Court is informed at this step of the inquiry by Mr. Timms' consistent denial of responsibility for his sexual offenses and the fact the he continues to blame his victims and others for his problems. Pet'r Ex. 5 at 29, 31; Pet'r Ex. 8 at 5. Dr. Warren also noted that Mr. Timms has a history of poor judgment and that he has failed to "demonstrate[] consistent recognition of the relationship between his actions and the[ir] consequences." Resp't Ex. 3 at 12. Furthermore, Mr. Timms has continued to incur infractions while incarcerated, including for possession of pornographic materials and for sexually assaulting another inmate in 2003. In March 2009, while in BOP custody after having been certified under the Act, Mr. Timms made comments to a

female member of the medical staff about arranging to meet after his release. The staff member noted in her report of the incident that she "felt worried for her safety at home for the first time in a long time since [she] started working [at Butner]." Pet'r Ex. 28.

Additionally, Mr. Timms has not heretofore participated in sex offender treatment. He refused treatment during his term of incarceration in Florida and was rejected from participating in the Sex Offender Treatment Program at FCI Butner in 2006 due to his multiple violations of his conditional release, his likelihood of having a corruptive influence on other participants, and his longstanding pattern of poor conduct while incarcerated. Resp't Ex. 3 at 6-7.

Although not fully addressed in the previous section regarding the government's burden to show that Mr. Timms currently suffers from a serious mental disorder, the Court is persuaded by Drs. Arnold and Demby that Mr. Timms' antisocial personality disorder and his paraphilic tendencies will cause him to have serious difficulty refraining from sexually violent conduct or child molestation if released. Dr. Demby opined that Mr. Timms has "psychopathic tendencies to his personality that aggravate his tendencies to violate social norms and use others for his own gratification." Pet'r Ex. 5 at 30-31. Dr. Arnold opined that "although Antisocial Personality Disorder does not generally predispose men to committing criminal sexual acts, Mr. Timms [sic] idiosyncratic expression of this personality disorder *does* specifically predispose him to committing criminal sexual acts that involve[] both sexually violent conduct and child molestation." Pet'r Ex. 8 at 6 (emphasis added). The Court credits the testimony of these two experts and their opinions of the interplay between the specific diagnoses at issue here and Mr. Timms' ability to refrain from certain types of conduct if released.

These opinions, coupled with Mr. Timms' continued violations while incarcerated, his

refusal to accept responsibility for his past conduct, and his lack of sex offender treatment persuade the Court that Mr. Timms will be unable to control his behavior and that he is a sufficiently distinguishable dangerous sex offender.

> [I]n cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Kansas v. Crane*, 534 U.S. 407, 413 (2002).

The Court finds, therefore, the government has satisfied its burden to show that Mr. Timms will have serious difficulty refraining from sexually violent conduct or child molestation if released. Accordingly, the Court now holds that the government has shown by clear and convincing evidence that Mr. Timms is sexually dangerous to others under the Adam Walsh Act.

## CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of petitioner, the United States of America, and against the respondent, Gerald Wayne Timms. Mr. Timms shall be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4248.

SO ORDERED this _17_ day of October, 2012.

                                              TERRENCE W. BOYLE
                                              UNITED STATES DISTRICT JUDGE